Foust *v.* The State.

JOHN B. FOUST *v.* THE STATE.

CRIMINAL LAW. *Carrying arms. Jurisdiction of justices of the peace.* Imprisonment for unlawful carrying a pistol, being discretionary and not imperative, justices of the peace have jurisdiction to try parties for such offenses under the small offense law, and may impose a fine of fifty dollars, if in their opinion the offense does not merit greater punishment.

FROM MACON.

Appeal in error from the Circuit Court of Macon county.    N. W. McCONNELL, J.

J. L. ROARK and T. C. MULLIGAN for Foust.

ATTORNEY-GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

This is a presentment and conviction from the county of Macon, for unlawfully carrying a pistol.

The case raises the single question whether a plea of former conviction and fine imposed by a justice of the peace, under what is known as the small offense law, is a bar to the prosecution in this case? His Honor, the circuit judge, held it was not, as we assume, on the ground that the justice had no jurisdiction to try and punish in this particular class of cases.

Section 4994 of the Code is: "Any person brought before a justice of the peace for a misdemeanor, may

Foust *v.* The State.

plead guilty, whereupon the justice shall hear the evidence, and fine the offender according to the aggravation of his offense, not less then two dollars nor more than fifty dollars." By section 4997, the party shall pay the fine and costs immediately, or give security, or be imprisoned until the same are paid.

By section 5001: "If the offense merit a fine *exceeding* fifty dollars, or *imprisonment* and *fine of any* amount, or imprisonment alone, or if the offense is *punishable* expressly by both fine and imprisonment, the justice shall not render judgment against the offender under the foregoing provisions, but shall bind the party to appear at the next circuit or criminal court."

It is clear, these provisions by their language, meet all the cases deemed likely to occur under our law, and probably do meet, all that can occur. On reading a summary of the original act as found in the case of *McGinnis* v. *The State,* 9 Hum., 43, *et seq,* it will be clearly shown that the policy of the Legislature was to give the justices of the peace of the State jurisdiction of all misdemeanors, or minor cases of violation of law, not reaching the grade of felony, under the conditions therein prescribed. The basis of this policy evidently was to cheapen the cost of administration, and enforcement of this branch of our criminal jurisprudence. The propriety of this policy is a question solely for the Legislature. We may say, however, that experience has, we think, shown in this and every like effort, cheap justice is most generally found inadequate justice, and has served largely as the means of

shielding the guilty from the full measure of penalty their violation of law demanded.

The only question that is, or can be made under these provisions is, whether under section 5001, the justice had no power to punish, but only to bind the party to appear at next circuit court, because the offense w s "expressly punishable by both fine and imprisonment, for if this was not the case, though meriting both fine and imprisonment, the justice is by the other provision, to judge .of this question, and his decision would be conclusive. This, however, shows what is meant by the language used, that is, that where both fine and imprisonment are imperatively required by the law as the punishment, then he is to bind the party to appear at the circuit or criminal court. And the same is the case where it is punishable "by imprisonment alone." This is the construction given to this language in *McGinnis* v. *The State*, 9 Hum., 55, where it is said "the class of cases here contemplated are those misdemeanors of *whatever* character, where by express provision of law, both fine and imprisonment *must* be inflicted as part of the judgment to be rendered in the case, and in respect to which no discretion is left to the judge, as the act of 1803, chapter 9, in cases of malicious mischief, selling spirituous liquors to slaves," etc.

This being the question, we must look to the provisions of the statute law, to see if this be a case where imprisonment is imperative upon the judge, if not, then the justice had jurisdiction, beyond all question.

Foust *v.* The State.

The first act of our Legislature prohibiting carrying pistols, was the act of 1870, section 4759 *b* of our Code.   It provided, in such cases, "on conviction the party shall pay a fine of not less than ten, nor more than fifty dollars, and be imprisoned at the discretion of the court, for a period of not less than thirty days, nor more than six months, and give bond in a sum not exceeding one thousand dollars to keep the peace for the next six months after conviction."

It is clear the imprisonment under this statute was imperative, the discretion being only as to the time, between "thirty days and six months."

This statute was found or thought to operate harshly in some cases, and "had been held subject to a constitutional objection, and so the next Legislature passed another act prohibiting the carrying of all pistols, except such as were commonly carried and used in the United States army, and these were only to be carried openly in the hands.   This punishment was fine as before, "not less than ten, nor more than fifty dollars, and *may* be imprisoned in the county jail not *more* than three months; provided, however, the court may commute the imprisonment altogether, and in lieu thereof, require the person convicted to give bond with approved security in not less than five hundred dollars, conditioned that he keep the peace for six months after such conviction."

This change in the law was intended to meet cases like *Coffee* v. *The State*, 4 Lea, 245, and *Tarrant* v. *The State*, 4 Lea, 483, where the party though within the letter of the law, but not within the real spirit

perhaps, at any rate, where there are large mitigations in his conduct, as where he used the weapon only in self-defense, or for a justifiable purpose.

In the first of these cases it was distinctly stated, that "facts disclosed may greatly extenuate the offense and justify the trial judge in remitting the discretionary part of the punishment, to-wit, the imprisonment, and he was authorized in the conclusion of the opinion, to again weigh all these circumstances with a view to remission of the imprisonment.

By the act of 1879, p. 231, it is true the act of 1871 was amended by adding *any other* kind of pistol, loaded cane, slung-shot and brass knucks, to the list of forbidden acts, and providing as to punishment, "that on conviction shall be fined fifty dollars and imprisoned in the county jail of the county where the offense is committed, the imprisonment only in the discretion of the court, *provided* the defendant shall give good and sufficient security for all the costs, fine and jail fees that may accrue by reason of the imprisonment of the defendant."

The language is somewhat changed, but not the meaning. However, it was a conviction under this very section the court had before it in the case of *Coffee* v. *The State,* before referred to, in which it was certainly adjudged the imprisonment was in the discretion of the court, and this given as instruction for the action of the court below, at the same time, however, this question came more directly under consideration in the case of *Tarrant* v. *The State,* 4 Lea, 483. The head note to that case as given by the

Attorney-General and Reporter is: "Imprisonment for unlawfully carrying pistols is within the discretion of the court trying the case, and this court will not interfere to remit imprisonment imposed in such cases, except where a gross abuse of this discretion is shown."

The court says, by Judge McFarland, "we may concede it was in the discretion of the court below to *remit* the imprisonment, as it was within his *discretion* to make the imprisonment a *part* of the punishment or not as *he* might deem proper." After settling this to be the law, the court declined to interfere with the action of the circuit judge, saying, "matters of this character are properly left to the sound discretion of the judges below, who are in better condition to act properly in this respect than we can be, and we cannot condemn them for exercising their discretion in a manner calculated to suppress the offense." It was added, however, that in a case of gross abuse of the discretion this court might correct it. All this was said on the direct question of remitting the imprisonment, and based on the assumption that the law unquestionably gave the judge power to imprison or not, and in such cases he might remit, but it was expressly held that where the punishment was fixed and no discretion, he could not remit, as was the case of the fifty dollars imposed as the fine in such cases.

These decisions are conclusive of the question, unless we can see good reason to overrule them. They decide the question beyond doubt, and were well considered.

The construction given, however, is in accord with the later policy of the law, as shown by the act of 1871, as well as the fair construction of the language itself.    The language is, "shall be fined fifty dollars and imprisoned in the county jail where the offense was committed," the imprisonment only in the discre- tion of the court.

That is the fine, which had been altered from ten to fifty dollars, under the former law, should be im- perative, but the imprisonment should be at the dis- cretion of the court, and so we hold in the above cases.

It is argued that this means that the imprisonment is imperative, but the length of time is discretionary. This cannot be in view of the past state of the law, as one consideration at least, for by the act of 1870 the law was that the imprisonment was imperative, and the time might be anywhere between thirty days and six months.    This was changed by the act of 1871, allowing the court to commute the imprisonment altogether, and this same discretion was intended to be perpetuated unchanged by the act of 1879.

But another view will show this argument cannot be sustained.    It involves the proposition that the imprisonment is both imperative and discretionary in the same proviso of the statute, for the first part imperatively provides for fine of fifty dollars and imprisonment, and the proviso applies only to the question of imprison- ment, that is, qualifies the thing provided for as im- perative, that is, the *imprisonment*, and makes that a matter of discretion with the court, and so the pro-

viso would re-enact the imperative, and at the same time make it discretionary.

Again, the argument that the discretion applies to the *time* of imprisonment, and not to the thing itself, as it says, would prove too much, for if that be the meaning then the court has unlimited discretion as to the time, and might imprison for any length of time, and this incongruity must inevitably follow, that a judge might make the punishment as severe as in a case of felony as to duration of punishment. This certainly was never intended.

But the conclusive answer to all this is, that if the Legislature had intended to confine the discretion to the time, it would simply have added, *provided* the time of imprisonment shall be at the discretion of the court, or for one, two, or any number of days, and not over six months, or some other fixed period, as in the original bill. But it is clear the language only applies the discretion to imprisonment at all, and not its duration. To make it otherwise is to interpolate on the law what is not found in it.

We take it, especially after the two decisions we have cited, no one would have thought of questioning this view had it not been that in this case a result not anticipated by the Legislature probably is unexpectedly opposed by making a case under the small offense law. That the cases of carrying a pistol, a loaded cane or slung shot being misdemeanors, should fall under the operation of the small offense law, may not be the most effectual mode of enforcing the sound policy of suppressing the use of pistols, but we sus-

pect if the pistols had not been included there would have been no thought of any incongruity in the other matters being subject to the same rule as assaults and batteries, and other like misdemeanors, nor would any strained construction been pressed on us in order to take them out of the small offense law.

We very sincerely sympathize with the efforts of the Legislature to suppress the common use of pistols, and would cheerfully go as far as the law permits to aid in promoting the end sought, but we cannot, and ought not, to indulge any zeal that shall warp our judgments, nor make law to supply omissions on the part of that body, if any exist, as was said in the case of *Rose* v. *The State,* 9 Lea, 391: "It may be that inadequate punishment is sometimes inflicted by justices of the peace in such cases, but this is a matter for the consideration of the Legislature." In this particular case, however, there is less to be apprehended than in the case then under consideration, an assault, because the Legislature has fixed it that there *shall* be a fine of fifty dollars, which, under the small offense law, must be paid or secured, or the party committed to jail until it is done, or discharged according to law. This is a fairly effective penalty, and as to it the justice has no discretion.

As to the argument that under the small offense law, the justice is given discretion from two dollars to fifty, the only effect of the two statutes is that in the pistol and other cases provided for by act of 1879, he cannot inflict a fine of less than the maximum amount provided for, that is fifty dollars.

Foust *v.* The State.

The provisions of the second section of act of 1873, still in force, that it is the duty of all peace officers of the State, including sheriffs, deputy sheriffs, constables, coroners and justices of the peace, to see the act be enforced, and to report without delay violations to the grand juries, has no effect certainly on the question of jurisdiction in this case. It is only a duty imposed on them in common with other peace officers, but has no reference to their jurisdiction to try such cases as may be brought before them.

We only add, that we must presume the Legislature knew the state of the law when they passed the various acts under consideration, and that jurisdiction was given by section 4996, sub-section 1, to justices to hear and determine all small offenses as after provided in section 4994—" the small offense law "—and having made no exception in the case of offenses under act of 1873 and 1879, the court cannot undertake to do so. This would be to legislate, not construe the law, which we have no authority to do, however desirable the end to be thus attained may appear to us.

It is the duty of courts, an imperative one, (some times hard to perform) to hold the scales steady and evenly balanced, especially when a tide of public feeling sets in strongly in favor of a popular or desirable end. No desirability in the end can justify them in yielding in the slightest to such pressure. The law, and that alone, is the sphere of their action, and nothing can justify a departure from what is plainly written. Let the law be supreme in the courts, and the

Legislature may be safely trusted to remedy deficiencies, and furnish the needed amendment. Certainly we have no power to do so.

The judgment reversed and case remanded.


TURNEY, J., delivered the following dissenting opinion:

Plaintiff in error was indicted for carrying a pistol. He pleaded to the indictment that he had been arrested and tried upon a warrant. That before the magistrate he pleaded guilty, and was fined fifty dollars, the magistrate being of opinion imprisonment was not authorized by the facts. The plea was demurred to and the demurrer sustained, when upon a plea of not guilty a conviction was had, and a fine of fifty dollars imposed and imprisonment for five days.

The only question before us is: Did the magistrate have jurisdiction to try the case and render the judgment?

The act of 1871, ch. 90, sec. 1, Code, 4759$f$, provides: "It shall not · be lawful for any person to publicly or privately carry a dirk, sword-cane, Spanish stiletto, belt or pocket pistol or other revolver, other than an army pistol, or such as are commonly carried or used in the United States army, and in no case shall it be lawful for any person to carry such army pistol in any other manner than openly in his hands, and any person guilty of a violation of the provisions of this section shall be guilty of a misdemeanor and subject to presentment or indictment, and on conviction shall pay a fine of not less than ten

nor more than fifty dollars, and may be imprisoned
in the county jail not more than three months: pro-
vided, however, the court may commute the imprison-
ment altogether, and in lieu thereof require the per-
son convicted to give bond with approved security in
not less than the sum of five hundred dollars, condi-
tioned that he keep the peace for six months after such
conviction."

Section 2. " It shall be the duty of all peace officers
in the State, including sheriffs, deputy sheriffs, co -
stables, coroners and *justices of the peace* to see that
the first section of this act be strictly enforced, and it
is hereby made their duty to report without delay any
violation thereof to the grand juries of their respect-
ive counties, and it shall be the duty of the grand
juries to send for witnesses in all cases when they
have good reason to believe there has been a violation
thereof, and upon satisfactory proof to make present-
ment of the same without a prosecution."

The act of 1879, ch. 186, sec. 1, amends the fore-
going as follows: "That the act of 1871, ch. 90, be
and is hereby amended, that hereafter it shall not be
lawful for any person to carry publicly or privately
any dirk, razor, sword-cane, Spanish stiletto, belt or
pocket pistol, revolver, or any kind of pistol, except
the army or navy pistol usually used in warfare, which
shall be carried openly in the hand, or loaded cane,
slung-shot, brass knucks, and any person guilty of a
violation of this act shall be subject to presentment
or indictment, and on conviction *shall* be fined fifty
dollars, *and imprisoned* in the county jail of the county

where the offense was committed, the imprisonment only in the discretion of the court."  .

It is observable that the amendment changes the original in these particulars : First, ·it adds to the list of prohibited weapons.  Second, it fixes the fine imperatively at fifty dollars.  Third, it changes the words *may be imprisoned* to *shall be imprisoned,* and leaves out the power conferred on the court `to commute the imprisonment altogether.

It is insisted for plaintiff in error that as the offense of carrying a pistol is a misdemeanor it may be tried and punished by a justice of the peace under the small offense law.  That the infliction of imprisonment is left to the discretion of the court under the facts of the case, and the magistrate being of opinion imprisonment should not be imposed may finally dispose of the case by assessing the fine.

The original and amended acts must be construed together.  The language of the first is, "shall pay a fine, and *may be imprisoned,"* that of the latter *"shall be fined and imprisoned."*  The substitution in the amendment of the imperative "*shall*" for the *"may"* employed in the original act evinces, as I think, a clear intention on the part of the Legislature to take from courts the discretion to omit or commute imprisonment altogether.  It shows the legislative opinion to have been that the carrying of the weapons specified in the manner forbidden was in every instance ·deserving of some imprisonment, and meant to say so to the courts, but as the facts of cases must necessarily differ the length of imprisonment was left to the

sound discretion of the court controlled by the facts The phraseology of the amendment interpreted by the light of the original act is as strong as our language can make it, " *shall be fined and imprisoned.*" We cannot construe " shall" here to mean " may," not only because it has purposely been substituted for it, but also for the further reason that if we do so construe it we will have the law to read, the court may fine and imprison, thereby giving to the court the discretion to leave off both fine and imprisonment, or he may leave off the one and impose the other. We cannot have a discretionary power in the court to omit imprisonment and an imperative mandate to impose the fine, both are governed by the one word " shall," and as that word is construed as to the one power it must be construed as to the other.

By the original act it is made the duty of justices of the peace to report without delay any violation of the act to the grand jury, this is in no wise modified or changed by the amendment. What justices of the peace are to do is well and distinctly defined. All jurisdiction is withheld from them, and they are declared to be reporters to the grand jury. They are simply tributaries to the efficiency of grand juries, the only place assigned to them by the law. The language is broad: " To report without delay any violation thereof to the grand jury." There is no power to try but simply to report, and if information was given to the magistrate upon which he issued his warrant, he might have investigated the case, and have reported that investigation to the grand jury, that would

have been discharging the only duty conferred upon him by the law. He cannot, by trying and fining, acquit himself of the express and unqualified obligation placed upon him by statute to report to the grand jury. If it had been the purpose of the Legislature that justices of the peace should have the jurisdiction claimed it certainly would have said so in terms in defining their duty in the premises, and not have left them as mere informers to grand juries. The declaration of their duties must be construed and understood to embrace all the Legislature intended to impose or confer on them. It excludes the conclusion that they have jurisdiction to try and punish.

In the cases which have been remanded that the circuit judge might, if he saw proper, review his discretion as to imprisonment, the questions presented by this record were not considered. The nearest case to a decision of the question is *Tarrant* v. *The State,* 4 Lea, 483, in which Judge McFarland uses the language: "We may concede it was in the discretion of the judge below to remit the imprisonment as it was within his discretion to make imprisonment part of the punishment or not as he might deem proper."

Taking this language in connection with the conclusion in the mind of the judge who framed it, and we are forced to see that it was used merely *arguendo,* and not with a view of laying down a principle or suggesting a construction. The entire opinion is as to the propriety and policy of this court undertaking to revise the discretion of the circuit court. In the next sentence Judge McFarland says: "It is

doubtful whether an appeal to this court can be sustained alone for the purpose of raising his discretion in this respect." And again he says: "But conceding that the power exists, its exercise in cases of this character would be unwise and injudicious." The seeming concessions are made not with a purpose of recognizing a principle in any sense but to show that even if such were the power of the court its exercise would be impolitic. The reasoning of the judge was to one conclusion, and cannot now be used as a settlement of a rule of law resulting in another and wholly different conclusion. It is the conclusion in the particular case upon its peculiar merits to which this court is bound, and not the reasoning by which the author of the opinion arrives at that conclusion.

As the question was not in judgment anything that has fallen from the judge seeming to bear upon it can be nothing more than *dictum.*

As said by Judge McFarland in that case: "The Legislature by the recent act referred to has increased the punishment for these offenses, thereby manifesting a decided purpose to suppress the crime."

We may go further, and say, the Legislature come as near as it could to make the crime a felony, and yet not do so. We know the history of this legislation to be that there was a strong disposition to make it a felony, and propositions of that character were made, and we may safely infer the Legislature studied the language employed, and had a purpose in amending the word "may" by the word "shall." That purpose was to compel courts to inflict such pun-

ishment as would accomplish its "decided purpose to suppress the crime." We should be slow to defeat the well understood purpose of the Legislature by doubtful construction.

For these reasons I think the judgment should be affirmed.

Cooke, Sp. J., concurs in this opinion.