SOUTHERN RY. CO. *v.* WHITLOCK.*

(*Knoxville.*    September Term, 1916.)

1. **RAILROADS.   Operation.   Injuries at crossings.   Evidence.**
Where plaintiff, driving a team, approached a crossing on a
deeply curved "Y," at a low speed, and looked, but saw no
train approaching, owing to construction of a billboard near
the track, until he was on the rails, when he saw a train
two hundred feet distant, and became excited, and was in-
jured in jumping from the wagon, the railroad was not en-
title to peremptory instruction.   (*Post, p.* 270.)

2. **RAILROADS.   Operation.   Injuries at crossings.   Evidence.
Warnings.**

An injured traveler cannot complain of the railroad trainmen's
failure to blow the whistle in approaching the crossing on which
he was injured, where he saw the train two hundred feet dis-
tant, and fully appreciated the danger.   (*Post, pp.* 270, 271.)

3. **RAILROADS.   Operation.   Crossing accidents.   Emergency.**
Where a traveler is placed in a position of sudden peril by the
negligence of a railroad, the omission of his part to exercise
such care as one not influenced by impending danger would
exercise is not necessarily a breach of duty constituting neg-
ligence on his part.   (*Post, pp.* 271-272.)

Case cited and approved:  Chattanooga, etc., R. Co. v. Cooper,
109 Tenn., 308.

4. **RAILROADS.   Operation.   Crossing accidents.   Emergency.**
That there was no gate or flagman at the crossing where a traveler
was injured was, if a condition of danger, a fixed one, apparent
to the traveler before he reached the crossing; and he must
guard against it as a condition that was antecedent.   (*Post,
pp.* 272-273.)

*Upon the question of negligence of railroad company in per-
mitting obstructions on its right of way which obstructs view of
track from highway crossing, see note in 12 L. R. A. (N. S.), 1067.
    For authorities on the question of duty of railroad employees
on approaching crossing as affected by obstruction of traveler's view
of track, see note in 22 L. R. A. (N. S.), 232.
    The question of care required of one in sudden emergency, see
not in 37 L. R. A. (N. S.), 43.

### FROM HAMBLEN.

Appeal from the Circuit Court of Hamblen County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. HON. G. McHENDERSON, Judge.

W. N. HICKEY, for plaintiff.

SUSONG & BIDDLE and HOLLOWAY & HICKEY, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Whitlock sued the railway company for personal injuries suffered at a street and railway crossing in Morristown. He recovered a judgment of $500 in the circuit court, and the railway company appealed to the court of civil appeals. Certain of the rulings of the last-named court were adverse to the plaintiff, while others were against the defendant. Each has filed a petition for *certiorari,* asking a review by this court.

Whitlock is a farmer residing near Morristown, and on the day of the accident had gone to town for the purpose of visiting the depot on business. He and his brother-in-law, Harris, were in a two-

horse wagon, and, finding the usual route to the depot barricaded against traffic, Whitlock was uncertain as to what street he should take, and made inquiry of, a colored man, Ferguson, who also was driving a vehicle towards the depot. Ferguson directed plaintiff to follow him south on Cumberland street, a much traveled thoroughfare.

As they passed along that street the main line of defendant's railway was crossed, and about one hundred and forty-five feet further on a crossing over a "Y," or spur track, is reached. On the east side of the street as one approached this crossing his view east up the spur track is obscured, except for a space of about twelve feet, by various structures until he gets within about thirty feet of the north rail of the track. The last obstruction to the view is a billboard, which was just being completed that day, passing which a traveler can see a train approaching on the spur track from the east for a distance of about two hundred and thirty feet, as well without stopping as he can by stopping, since as he draws nearer the track the vision distance lessens on account of a heavy curve on the track east.

Whitlock, who drove, was fairly, but not wholly, unfamiliar with the crossing, but on account of the general surroundings he appreciated that it was dangerous, and testified that he proceeded slowly, listening and watching constantly for the approach of a train, but that the wagon was not stopped.

Southern Ry. Co. v. Whitlock.

There were two industries and a locomotive near by on the main line which made noises that rendered it difficult for a person to hear the bell of a locomotive coming from the east on the spur track. Ferguson, about thirty steps ahead, passed over this crossing in safety, but as plaintiff followed and had reached the track, and as the front wheels of his wagon passed over the nearer rail, he discovered a locomotive pushing three freight cars on the spur track towards the crossing. These cars were about two hundred feet away when observed by plaintiff. In order to get out of the way of the cars, he testified that, meaning to pull the horses to the left quickly, he missed the left line, and pulled the right line, unexpectedly throwing the wagon in a circle and pulling the team back on the track; that the train was coming right on, and he became excited. He made another effort to get the wagon, which hung to the rail, off the track, when looking back over his shoulder he saw the train coming down, and seeing that he could not stay there longer, he made a jump. Harris having already jumped out, and his feet became entangled in a chair in the wagon, and he fell on his head and hands, and suffered injuries for which he sues.

On the question of the rate of speed of the oncoming train of cars, plaintiff testified:

"I am not a judge of how fast it was running very much, but it seems to me it was going a pretty

rapid rate.   It seems to me anyhow it was going ten or twelve miles per hour.''

At the time Whitlock jumped the cars had approached to a point near the east of the street, about seventy-five feet from the point where  he  jumped from his wagon.

The bell on the engine was continuously rung, but plaintiff says he did not hear it.   Two   brakesmen were stationed on the end of forward car to give warning, and one of them did so,  after  observing plaintiff's predicament.   Harris as he jumped cried out to plaintiff: ''Look out! it is right on us.''

The theory of plaintiff for recovery is that he acted in sudden peril or imminent danger, brought about by the negligence of the defendant company.

The defendant moved the court for peremptory instructions, which the trial judge overruled.   It has assigned error in respect to that ruling, and insists that no negligence on its part is shown which could have produced any peril of plaintiff, but that plaintiff himself was negligent. We think that the court of civil appeals reached a correct result in holding against defendant company on its motion.   We place this ruling on the rate of speed of the cars on the spur track under the conditions surrounding the crossing, and particularly the condition incident to the recent construction of the billboard.

We do not think the claim of plaintiff is sound to the effect that insufficient warning, the mere ringing of the bell, added to his hazard, since the plaintiff in

point of fact saw the cars moving towards him, and fully appreciated the danger of their approach without any further warning, and this, too, before the imminence of peril on which he relies came into existence. We fail to see how a failure to blow the whistle could have been a factor in producing the peril.

Several of the assignments of error involve the question as to whether the jury should have been charged that plaintiff could not base 'his right to recover upon the absence of a gate or a watchman at the Cumberland street crossing, he not having been injured by a collision with the cars, and the sole basis of his claim to recovery being a sudden peril leading to self-inflicted injury. The defendant's claim is that the absence of gates was open to observation before plaintiff reached the track, and that a recovery, if any, must be predicated on improper operation of the train as the only factor of sudden peril in the case.

The court of civil appeals was divided on this question, a majority holding in opposition to the insistence of defendant company.

The rule that where a traveler is placed in a position of sudden peril by the negligence of a defendant, the omission on his part to exercise such care as one not influencd by impending danger would exercise is not necessarily a breach of duty constituting negligence on his part, is recognized in this State.

*Chattanooga, etc., R. Co. v. Cooper,* 109 Tenn., 308, 70 S. W., 72, and cases cited.

But the doctrine is not without its limitations. Thus, in 3 Elliott on Railroads (2d Ed.), sec. 1173, it is said:

"The peril which will exonerate the traveler from the exercise of that care which the law requires of travelers at railroad crossings must be in its nature an extraordinarily one, in the sense that it is not such as ordinarily pertains to railroad crossings; for, as a matter of fact and of law, such crosings are places of great danger, exacting from the traveler care and caution . . . The rule cannot obtain where the danger is one incident to the place, its use or surroundings, for such danger is not sudden peril within the meaning of the law, but a danger to be anticipated, and guarded against by proper care and precaution."

Again quoting from the same standard authority:

"Care is required to keep out of danger, as well as to avoid it after getting into it, and the rule that sudden peril excuses does not govern where the plaintiff, without exercising due care, goes into a place of danger, such as a railroad crossing is, and of which danger the track itself is a warning."

That there was no gate or flagman at the crossing was, if a condition of danger, then a fixed one, apparent to the plaintiff before he reached the place of peril; and he must be held to guard against it as a condition that was antecedent. It was not either

an extraordinary or a coefficient factor that goes to make a case of imminency of peril, at the base of which is some unexpected, unanticipated happening, calling for immediate action in the sudden stress occasioned. We, therefore, agree with the minority of the court of civil appeals.

The assignments of error above referred to are disposed of in accord with what has been said in regard to this limitation. Other assignments of error are disposed of in a memorandum for judgment.

The judgment of the court of civil appeals is modified, and the cause remanded to the circuit court for another trial.