## J. A. HENRY v. W. F. SHARP.

Eastern Section. October 27, 1928.

Petition for Certiorari denied by Supreme Court, February 10, 1929.

Peace and Sloan, of Madisonville, R. R. Kramer, of Maryville, and S. P. Dannel, of Loudon, for plaintiff in error.

W. H. Gamble, of Maryville, E. E. Watkins and C. E. Wagoner, of Loudon, for defendant in error.

PORTRUM, J. Mrs. Mary A. Henry was run down and killed, in front of her home, on May 5, 1927 by an automobile driven by W. F. Sharp. J. A. Henry brings this suit to recover for her death. The jury brought in a verdict of $5,000, in favor of the plaintiff, and against the defendant, and an appeal is prosecuted to this court. The principal error assigned is that there is no evidence to support the verdict.

Mrs. Henry was attracted to the road by the mail carrier, who had a package to deliver, which was of a dimension that would not enter the mail box, so he blew his horn to attract attention in order that some one would come to receive the mail. The mail box was placed opposite the house across the road, and the mail carrier had driven up to the box and stopped on the side of the road near the

mail box. Mrs. Henry had crossed the road and received the mail and had started back when the mail carrier called out: "Look out, there comes a car."

She turned her head and saw the car and attempted to run across the road to a place of safety, but the car bore down upon her and, in an attempt to avoid her, ran to the left and almost off of the road but since she was running to the left, the car struck her, about mid-ways between the fenders, and ran over her, running the length of the car, or more, before stopping. Mrs. Henry was taken into the house, where she lived for a few hours.

Returning to the accident, the physical facts show the automobile struck Mrs. Henry about thirteen feet from the mail carrier's car, and it had skidded twenty-five feet before striking her. Mrs. Henry had a daughter, who was standing on the porch and saw the approaching car and testified it was running from thirty-five to forty miles an hour. It was the theory of the plaintiff that the defendant was guilty of negligence in operating his car at a high and dangerous rate of speed, in violation of the statute, and he was negligent in losing control of his car at a place where it was his duty to use care in attempting to pass an automobile on the side of the road when a pedestrian was in his right-of-way.

The defendant's theory is, that he approached the scene of the accident with his car under control, running at a rate of ten to fifteen miles an hour; he saw the deceased about two hundred feet away; he blew his horn; the deceased looked up and looked away; he came on a piece farther and blew his horn again; the deceased looked up at him and then stepped up near the mail carrier's car (which would be an invitation to him to pass to her left); he came on and just as he got opposite the mail carrier's car she stepped suddenly in front of him, when it was impossible for him to stop his car, and the accident was unavoidable on his part. He denies his car skidded, claiming it was the car of one of the Henrys. If this testimony is true, the accident was an unavoidable accident, brought about without fault or negligence on the part of the defendant. But evidently the jury disbelieved the defendant's testimony and disregarded his theory. Certainly it was contrary to the theory and the testimony of the plaintiff. It is not for us to say which of the theories is correct. Our only inquiry is whether or not there is evidence to support the plaintiff's theory.

The defendant claims that on the plaintiff's theory there is no evidence to support the verdict, because the deceased was guilty of such contributory negligence as to bar plaintiff's recovery. He claims the deceased was in a place of safety and ran out suddenly in a place of danger and notwithstanding he may have been negli-

gent, still the negligence of the deceased concurred and defeated plaintiff's right of recovery.

Ordinarily, a person in a place of safety, dashing out into a place of danger, is guilty of such negligence as would bar that person's right of recovery. But there is an exception, excusing one from such conduct when one is thrown in a place of sudden peril. If the facts in this case show the deceased was thrown in a place of sudden peril, then she is excused from her own negligence, if in fact it was negligence to make an attempt to cross the road and seek a place of safety beyond the main travel way.

The plaintiff's proof is that the lady had gotten the mail and had started back across the road. when the mailman called out: "Look out, there comes a car." She was directly in the wake of the car and when she saw the car she made a dash. The car swerved to the left also and struck her after she gained a place where ordinarily she would have been safe. We think there can be little doubt but that the woman was confronted with a perilous alternative; she must act quickly and decide whether to go on or to turn back, and if she made an unwise decision. it should not be charged to her as negligent conduct barring plaintiff's recovery.

"It is well settled by all the authorities that a plaintiff put in a place of sudden peril by the negligent act of the defendant, who, losing his presence of mind, takes the wrong step, and is injured, will not have such step imputed to him as contributory negligence." Chattanooga Electric Railway Company v. Cooper. 109 Tenn.. 308, 70 S. W.. 72. See also Railway v. Burley. 80 Tenn.. 405; Marble Company v. Black. 89 Tenn.. 118, 14 S. W.. 487; Railroad v. Hugh. 97 Tenn.. 634. 37 S. W.. 555; Railroad v. Ridley, 114 Tenn., 727, 86 S. W.. 606; Doyle v. Chattanooga, 128 Tenn., 433, 161 S. W., 997.

It was a question for the jury to determine whether or not the deceased was thrown in a place of peril. This the jury has determined in favor of the plaintiff. The testimony that the defendant was operating his car at a rate of thirty-five to forty-five miles an hour was competent and before the jury, and the fact that the car skidded twenty-five feet bears out the theory of the plaintiff and disproves the theory of the defendant, that he was operating his car at a rate of ten to fifteen miles an hour. The statement that he did not skid his car is not borne out by the physical facts, nor the statement of any other witness. There were several people at the scene of the accident immediately after the accident. These witnesses say his car made the skid marks.

We are of the opinion there is abundant proof in the record supporting the theory of the plaintiff that the defendant was negligent in operating his car at a high and dangerous rate of speed, in violation of the statute, and he was negligent in attempting to pass the

car with the pedestrian at the side in the road, with his car out of control, and his car was out of control, otherwise he could have turned and passed between the mail car and the fleeing woman.

We have examined the assignment touching the charge of the court. The judge committed no reversible error in saying a driver should occupy the right of the road when meeting traffic or persons on the highway unless there should be circumstances which would justify a reasonably prudent man to do otherwise. The court immediately stated to the jury that the defendant had the right to pass on the left in passing a mail car but he was required to use reasonable care in doing so. The defendant complains because the judge failed to charge fully upon the question of remote contributory negligence. The defendant failed to present a special request, calling the court's attention to the question of remote contributory negligence; in the absence of such request there is no reversible error in the failure of the judge to make the charge.

The last assignment of error is that the verdict is so excessive as to evince prejudice, passion, partiality and caprice on the part of the jury. The woman was fifty-seven years old and the mother of several children; she was in good health and the housekeeper in her home.

It is quite difficult to determine the value of a life. Some courts fix one amount and some another. We are confronted with this question quite often and find that juries sometimes fix one amount and then another. We would be glad if there was a standard by which we could arrive at the amount in each case. But there is no such thing. Money has greatly depreciated in value in the last decade, and for this reason cases are not always valuable as precedents. It seems to us that $5,000 in this day is not an excessive amount to compensate for the life of a woman fifty-seven years old, in good health. Therefore this assignment of error must be overruled.

The judgment of the lower court is affirmed.

Snodgrass and Thompson, JJ., concur.