JOHNSON *v.* COPELAND.

(*Nashville,* December Term, 1941.)

Opinion filed February 28, 1942.

Goodpasture & Carpenter, of Nashville, for plaintiff in error.

J. Gordon Shanklin and Z. Alexander Looby, both of Nashville, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a suit brought under the Workmen's Compensation Act, Code 1932, sec. 6851 et seq., in which there was an award in favor of the widow and dependent grandchild of Will Copeland, deceased, who met his death while in the employ of defendant Johnson. Defendant has appealed in error.

Some question was made in the court below as to the *bona fides* of the relationship to and dependency on deceased of those in favor of whom the award was made. It was also insisted that the plaintiff Zuelene Charter Copeland, if indeed married to deceased, had abandoned him. These controversies, however, involved issues of fact which were resolved by the trial judge in favor of the claimants. There was ample evidence to sustain the finding of the court below and these questions need not be further considered.

The principal defense is that the employee met his death as result of willful disobedience of orders given to him on many occasions by his employer, the defendant. Defendant operated a dry cleaning establishment and the deceased had been employed there for a number of years and was familiar with all the details of the business. Defendant testified that deceased was a trusted employee, interested in the business, and an employee he (defendant) highly regarded. The principal duties of the deceased were in connection with the operation of a washer. This appears to be a revolving appliance, similar to a

churn or washing machine, into which a cleaning fluid is placed. This fluid is inflammable, more inflammable than kerosene, but not so inflammable as gasoline.

It was the business of the deceased to put the soiled articles into the washer, close it up, and after such articles had remained in the washer for a sufficient length of time, to remove them and take them to the drier.

The articles subjected to this process would be wet when removed from the washer and in handling them the clothing of the deceased would become wet, saturated as some of the witnesses say, with the cleaning fluid. For this reason deceased would put on some old clothes before beginning his work around the washer—clothes which he did not wear elsewhere.

In addition to his work around the washer, the defendant was required to start a fire under the boiler each morning and then sweep out the place. He came a half hour earlier than the other employees to attend to these extra duties and received some extra pay for the performance of such duties. He would make the fire under the boiler and sweep out while wearing his street clothes. He would then remove his street clothes and put on the old clothes, used for that purpose, before beginning his duties around the washer.

Proof shows that it was the custom of the defendant to have meetings of his employees from time to time in which they would discuss safety methods and efficiency methods. The proof is clear that the deceased was repeatedly warned as to the danger of going into the boiler room, or about any fire, while wearing the clothing he used in his work around the washer. Indeed, it appears that the deceased was expressly forbidden to go into the

boiler room while wearing these garments used by him in his work around the washer.

About noon on the day of his death, the deceased was seen by numbers of witnesses running out into the yard at the dry cleaning establishment, his clothing in flames, and screaming. Deceased came from the direction of the boiler room. Efforts were made by those nearby and the flames extinguished but the employee received fatal burns from which he died in a few hours.

A witness named Wallace Johnson, a cousin and employee of defendant who worked with deceased, testified that he saw the deceased come out on fire and was asked what deceased said. The witness replied that deceased said, "Oh, Lord, let me get well." The witness was then asked and answered as follows:

"Q. Did you hear him make any statement of explanation in the boiler room? A. He made the statement that something was on fire and he was trying to put it out."

This is the only evidence in the record as to how the clothing of the deceased caught on fire. Objection was made to this testimony in the court below but the objection was overruled, and this action of the court is assigned for error.

We think the evidence was admissible as part of the *res gestae*. The case in this respect is quite similar to *National Life & Accident Ins. Co.* v. *Follett,* 168 Tenn., 647, 80 S. W. (2d), 92, where we gave much consideration to the admissibility of statements of this character. It was there ruled that such statements in explanation of an accidental injury by the victim, made while the victim was in mortal agony, when in no condition to devise anything for his own advantage, were admissible in evidence,

although some small interval of time intervened between the accident and the statement.

There is nothing in the evidence suggesting that the clothing of the deceased caught on fire in any way other than that stated by him as above. Such being the case, we think that the deceased cannot be charged with willful disobedience of orders.

In a negligence case, acts of a plaintiff which would ordinarily be regarded as contributory negligence defeating his suit would not be so regarded if the plaintiff acted in an emergency. For a stronger reason an employee acting in the master's interest when an emergency arises should not be charged with willful disobedience of orders although the thing he did was a thing forbidden when no emergency existed.

The proof in this case shows that those entering the boiler room after this accident found the door to the fire box open and live coals on the floor of the boiler room. If, as the deceased said, something was on fire, and he went into the boiler room to put it out by way of saving his employer's property, he should not be charged with willful disobedience of orders for so acting. Quite naturally the deceased might have overlooked the inflammable tendency of his clothing under these circumstances.

We find no error in the judgment below and the same is affirmed.