# CHERRY v. SAMPSON.—232 S. W. (2d) 610.

Eastern Section.   May 23, 1950.

Rehearing denied July 11, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

Williams & Williams, of Chattanooga, for plaintiff in error.

H. M. Vaughn and Lawrence C. Loy, both of Chattanooga, for defendant in error.

HALE, J.   We speak of the parties as they appeared in the court below.   The plaintiff, Georgia Sampson, sued to recover for personal injuries she sustained in a fall in the place of business of the defendant, Gertrude K. Cherry, under the name of I. F. Cherry Dry Cleaning Co.   The fall was caused by her foot catching on to a molding at the base of a counter.   A trial by jury resulted in a verdit in plaintiff's favor for $1,200.00, which was approved by the able trial judge when tested by defendant's motion for a new trial.

The gist of the assignments of error is that the trial judge erred in refusing peremptory instructions at the close of the proof, because:  (a) there is no evidence to support the verdict, and (b) the plaintiff was guilty of contributory negligence as a matter of law, barring a recovery.

■■ This requires a review of the evidence, but "such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases.   It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict."   Rose & Co. v. Snyder, 185 Tenn. 499 at page 508, 206 S. W. (2d) 897, 901.

The defendant has several dry cleaning establishments in Chattanooga, and has owned and operated the one at 209 West Ninth Street since the year 1929.   Some-

thing like 12 or 15 years ago she built a counter therein, separating the working space from that used by patrons. This counter extended all the way across the room except for a gate attached thereto allowing employees access to both sections of the room. At the base of this counter was a narrow molding extending to the gate which was on the right, facing the counter. This molding was flush with the floor to a point near the right end where it appears to be appreciably higher than the floor. We consider it immaterial whether this was a vice in the original construction, as indicated by defendant's witness Hatfield, or whether it was due to the sagging of the floor, the building being old and dilapidated. Plaintiff testified the floor was lower at this particular point. This molding was insecurely attached to the base of the counter at this point for about 36 inches. Nails had been driven in at this space but an examination made on the second day after the accident showed these nails were bent and rusty and had not been driven into the base of the counter. This molding was sprung about ¾ of an inch from the base of the counter and dirt and debris had collected between it and the counter. The photographs filed in evidence indicate there was a space between the bottom of this molding and the floor sufficient to allow debris to collect therein.

Plaintiff was a patron of this establishment and had been there many times prior to the day in question. She had not noticed anything wrong with the premises. No other accident had occurred there.

Late on the afternoon of Saturday, February 7th, 1948, the plaintiff went into this place of business to get some articles she had left there for cleaning. It was raining and she was wearing galoshes which were about an inch longer than her shoes. The place of business was crowded

with other patrons ahead of her. She took her position at the extreme right end of the counter awaiting her turn. When the others had been served she asked for her material, which was then placed on the counter. She paid the charge, took her parcel and turned to the right to pick up a bag of groceries. The toe of her right galosh caught under this molding. She pulled loose, suddenly throwing her weight on her left leg and causing her to fall, resulting in the injuries sued for. The loose molding slapped back in place with a loud noise. An examination made the following Monday morning showed the defects before mentioned. The rusty nails indicated this condition had existed for a considerable period of time.

The plaintiff was an invitee, on a mission for the mutual benefit of the parties, and she was properly occupying a space provided for patrons of the defendant. The defect in the molding was not obvious.

█ Any person, who expressly or by implication invites others to come upon his premises, whether for business or any other purpose, has the duty of being reasonably sure that he is not inviting them into danger, and to that end must exercise ordinary care and prudence, to render the premises reasonably safe for the visit. Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 288, 210 S. W. 153; Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S. W. 646; Worsham v. Dempster, 148 Tenn. 267, 255 S. W. 52; Garis v. Eberling, 18 Tenn. App. 1, 71 S. W. (2d) 215; Gargaro v. Kroger Gro. & Baking Co., 22 Tenn. App. 70, 118 S. W. (2d) 561; Anderson v. Peters, 22 Tenn. App. 563, 124 S. W. (2d) 717; American Nat. Bank v. Wolfe, 22 Tenn. App. 642, 125 S. W. (2d) 193; Dolan v. Bry Block Co., 23 Tenn. App. 47, 126 S. W. (2d) 376.

We have pointed out that this counter was built some 12 or 15 years prior to the accident. The molding was not flush with the floor at the right end. Whether this was due to original faulty construction, or to the sagging of the floor, or a combination of both factors, is not a matter of great moment. It existed. And the jury was warranted in concluding it had been in existence for a considerable period of time.

█ This tends to charge the defendant with constructive notice. The fact that defendant's employees in charge of this office swept by this molding daily tends to supply actual notice. It is true they say that this sweeping would have disclosed the defective condition of this molding, if it had been defective. Ergo, not having been discovered it was not defective. Probably the jury concluded that by the exercise of ordinary care they could have observed or discovered this condition. Certainly, that seems to be a reasonable inference.

█ We think the question of defendant's negligence was properly submitted to the jury, and that its verdict is supported by material evidence. Smith v. Sloan, Tenn. Sup., 225 S. W. (2d) 539.

It is said the plaintiff was guilty of contributory negligence as a matter of law; that she did not act with due circumspection and prudence when she undertook to pull her foot loose; that she should have put down her bundle and have undertaken to disengage her foot, or else called for assistance.

While being cross-examined she testified:

"Q. You don't know what had ahold of your foot? A. I didn't know what had me.

"Q. Were you scared? A. Lord, yes sir, I was scared."

■ It seems to us that such an occurrence would tend to excite or frighten a person, thus bringing into effect the emergency rule.

In McMillan Marble Co. v. Black, 89 Tenn. 118, at page 125, 14 S. W. 479, 480, it is said: "That the deceased, in the excitement of the moment, lost his presence of mind, and in an honest effort to save his life, by mistake pursued the course to lose it, is no excuse for the negligence of the defendant which caused the disaster. East Tennessee, V. & G. Railroad v. Gurley, 12 Lea [46] 47." To the same effect see Southern R. Co. v. Pugh, 97 Tenn. 624, 37 S. W. 555; Chattanooga Elec. R. Co. v. Cooper, 109 Tenn. 308, 70 S. W. 72; Southern Ry. Co. v. Whitlock, 136 Tenn. 266, 188 S. W. 1151; Johnson v. Copeland, 178 Tenn. 431, 158 S. W. (2d) 986; Coppenger v. Babcock L. & L. Co., 8 Tenn. App. 108; Power Packing Co. v. Borum, 8 Tenn. App. 162; Henry v. Sharp, 9 Tenn. App. 350; Tennessee Electric Power Co. v. Hanson, 18 Tenn. App. 542, 79 S. W. (2d) 818.

The verdict of the jury establishes that through the negligence of the defendant, and not through the negligence of the plaintiff, she was placed in a position of peril, thus bringing into effect the rule announced in the foregoing cases.

■ We think the issue of contributory negligence was properly submitted to the jury.

The judgment below is affirmed with interest and cost.

McAmis and Howard, JJ., concur.

On Petition to Rehear.

HALE, J. Mrs. Cherry has filed a petition to rehear directed at the opinion filed on May 23, 1950. (1) It is asserted "That in the opinion handed down by your

Honors it was held in substance that the fact that the molding was not flush with the floor was a defect. It is respectfully maintained that even if, as a matter of fact, this condition did exist, it was not alleged in plaintiff Sampson's declaration, and, as a matter of fact, plaintiff based her entire case and claimed as the only defect the looseness of the molding in question.''

■ The declaration charges this molding was "loose and so loose *and in such shape* that it was unsafe". (Emphasis supplied.) No objection was made to the introduction of evidence of the floor being lower than the strip in question. The photographs filed by the petitioner show this strip is not flush with the floor at the place the plaintiff was injured.

Next it is said: "Your Honors held that plaintiff caught the toe of her right galosh under the molding in question. We beg to differ with your Honors on this point. The record is silent as to how or what part of plaintiff's right foot was hung.''

■ The plaintiff testified her galoshes were longer than her shoes; that was "about an inch . . . vacant space" between her toe and the outer part of the galosh. She was facing the counter, and there is no evidence of deformity in her foot. We think a fair inference is that her toe was caught under or by this molding.

■ It is next said there is "absolutely no evidence in the record showing that the molding was loose prior to the accident". John Crowl testified that on the second day after the accident he examined this molding and found (a) there was trash and dirt "accumulated" under it; and (b) the nails at the end were bent and rusty and hadn't been driven into anything else. The jury accepted this testimony and we are bound thereby. A fair inference is that this molding had not been properly

nailed to the base and that this condition had existed so long as to allow the accumulation of dirt and trash behind it.

It is said we erred in not applying the rule announced in Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S. W. 646, and Hill v. Castner-Knott Dry Goods Co., 25 Tenn. App. 230, 166 S. W. (2d) 638, to the effect that a verdict cannot be based upon conjecture. This is sound law, but has no application to the instant case, which shows a defective condition, existing for such a period of time, and under such conditions, as to charge the owner with actual or constructive knowledge thereof, which was the prime and proximate cause of plaintiff's fall and resultant injury.

The petition to rehear is denied.