# E. F. NOE et al. v. VERNON L. TALLEY.

## E. F. NOE et al. v. VERNON L. TALLEY, Adm'r.— 274 S. W. (2d) 367.

· Eastern Section. July 1, 1954.

Petition for Certiorari denied by Supreme Court, September 6, 1954.

Kramer, Dye, McNabb & Greenwood, of Knoxville, for plaintiffs in error.

Hale & Wisecarver, of Jefferson City, for defendants in error.

McAMIS, P. J. These two cases were tried together in the Circuit Court and are here on a single transcript. In each case a judgment was rendered on a jury verdict

in favor of the plaintiff and defendants have appealed, complaining that there is no evidence supporting the verdicts; that the court erred in admitting evidence offered by the plaintiffs as tending to identify their truck as the one seen by plaintiffs' witnesses emitting a cloud of smoke as it travelled toward the point of collision, and that a statement of the deceased Mrs. Talley was erroneously admitted as part of the res gestae.

Mrs. Talley died a few hours after colliding with the rear of a petroleum transport, trailer-type, truck owned by defendants, E. F. Noe and C. F. Noe, and operated by their servant, the defendant George Denton, in hauling gasoline on U. S. Highway 11E, December 27, 1951. Mrs. Talley was traveling alone in an easterly direction, driving her husband's Plymouth automobile from her home in Jefferson City to Morristown where she was employed. All of the witnesses agree that the collision occurred at about 10:30 p.m. Her husband sues as Administrator to recover for her death and, in his own right, to recover for the practical destruction of his automobile. In the suit of the Administrator the judgment is for $9,000 and, in the action for damage to the automobile, $1,000.

It is the theory of plaintiffs that the truck, equipped with a Diesel engine, developed motor trouble as it left Jefferson City traveling eastwardly toward Morristown; that it was moving slowly emitting a cloud of dark vapors or smoke and that the driver was finally forced to stop at the point of collision about three and one-half miles east of Jefferson City; that when Mrs. Talley, driving in the same direction, approached the point of collision the truck was parked on the pavement without lights or flares and invisible from the rear because of the smoke

being emitted from the motor; that, in so operating the truck and parking it on the pavement, defendants were guilty of both common law and statutory negligence proximately resulting in the death of Mrs. Talley.

Defendants, on plaintiffs' motion, filed special pleas insisting the truck was in perfect mechanical condition; that, although equipped with a Diesel motor, it was burning kerosene at the time and emitting no obstructive vapors or smoke and that it was never stopped on the pavement but, at the time of the collision, was traveling on the right side of the highway at a speed of 30 or 35 miles per hour when Mrs. Talley, traveling at an excessive speed, negligently and without warning crashed into the rear of the truck despite the fact that it was adequately provided with reflectors and tail lights. In line with their insistence that the truck was never stopped, defendants concede that no flares were put out on the highway. Thus, it seems to us, the primary questions for the jury were whether the truck, concealed or partially obscured by smoke, stopped on the pavement and, if so, whether Mrs. Talley was guilty of proximate contributory negligence.

 It is axiomatic that in reviewing the trial court's determination of issues of fact in acting on a motion for a new trial the appellate court reviews the evidence not to determine the weight of the proof but only to see whether there is any substantial evidence to support the verdict and judgment; and such review "must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow

all reasonable inferences to sustain the verdict. Johnston v. Cincinnati, N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S. W. 429; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. 2d 564, 570.'' D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 508, 206 S. W. (2d) 897, 901.

■ ■ A corollary of the rule just stated is that, in a civil case depending on circumstantial evidence, there is material evidence in favor of the party who is able to make out the more probable hypothesis. The triers of the facts are thus relieved of a needless attempt to draw inferences from two or more equally plausible but conflicting theories and, on such proof, the case must go to the jury. Law v. Louisville & N. R. Co., 179 Tenn. 687, 170 S. W. (2d) 360, and cases there cited. And, once evidence sufficient to sustain a given hypothesis as the more probable or reasonable has been supplied no amount of countervailing evidence will serve to take the case from the jury. Johnson v. Ely, 30 Tenn. App. 294, 205 S. W. (2d) 759; McConnell v. Jones, 33 Tenn. App. 14, 228 S. W. (2d) 117.

With these principles in mind we have examined the evidence offered in support of plaintiffs' insistence that defendants' truck was in difficulty causing it to give off clouds of vapor or smoke and finally come to a stop.

There is undisputed evidence that *a* petroleum transport truck was in difficulty, emitting smoke in large volume and traveling east between Jefferson City and the point of collision at about 10:15 P.M. or about 15 minutes before the accident occurred. Its speed was estimated by plaintiffs' witness Perkins at about five miles per hour. Perkins testified that after leaving Jefferson City he drove up behind a truck but did not see it until within 18 inches of its rear because of smoke on the highway

coming from the engine of the truck; that the engine was backfiring and, because of the dense smoke, he could not see the highway well enough to pass and was forced to trail behind the truck for eight tenths of a mile when he finally met another car and from its lights was able to see the highway sufficiently to pass. He was then about 1,000 feet west of the point of collision. He proceeded to his home without knowing of the accident until the following morning when he returned and examined the scene. A passenger in the Perkins car testified to the same effect. Neither saw any other tank truck except the one in difficulty east of Jefferson City. There is other evidence of a similar nature showing the presence of a tank truck in difficulty, emitting smoke and traveling toward the point of collision at about 10:15 P.M.

At five miles per hour the smoking truck would travel one mile in twelve minutes. The eight tenths of a mile which the Perkins car trailed it before passing added to the 1,000 feet between the passing point and the point of collision would equal a fraction over one mile. If the jury accepted Perkins' testimony as to distance and speed, they could well find that the smoking truck reached the point of collision at or just before the time fixed by all the witnesses as the time of the collision. And, as this witness as well as the witnesses who were traveling from the east saw no other oil truck on the highway, the jury could well find that it was defendants' truck described by Perkins and his companion as being in trouble and emitting smoke.

But there is other testimony which tends to show that defendants' truck was having engine trouble and had stopped before the collision. Two witnesses, the Misses Davis, living about 100 feet north of the highway testified

that they heard an unusual noise on the highway like a truck or tractor motor making a ''grinding noise'' which ''sounded like a motor after it stops, and is trying to start and can't''; that this continued ''for a few minutes'' and until they heard a car approaching, followed by a crash and a woman screaming. They had retired for the night but looked out the window after the crash and saw a truck standing where they had heard the sound of a motor.

There is another circumstance to which the jury may have given some weight. Although the evidence is conflicting, there is credible proof that the Talley car made no skid marks and that, after the collision, it was only about 10 feet behind the truck. The driver of the truck testified he had not stopped but was traveling at 30 or 35 miles per hour and had no knowledge of the presence of the Talley car until he saw a ''flash of light'' just prior to the impact. The jury might reasonably have concluded that if the truck had been moving at 30 miles per hour it would have been impossible to stop it within a distance of only 10 feet and, for that reason, it must have been standing still when hit by the car.

All of these circumstances tend to confirm and support plaintiffs' theory and insistence and we think *they are sufficient to support a jury finding. We do not* understand that defendants deny that, if it occurred, operating a truck in dense smoke and stopping it on a heavily traveled highway without flares or other warning would constitute actionable negligence.

As to contributory negligence on the part of the deceased, two witnesses testified that Mrs. Talley passed them three or four hundred yards west of the point of collision at a speed estimated at between 60 and 70 miles

per hour. There is also proof that after the collision the speedometer on the car stood at 90 but the proof shows that an impact may cause the speedometer needle to jump and stick and that the position of the needle after a wreck is of doubtful worth. Mrs. Talley may have speeded up to pass and slowed down before reaching the point of collision. The highway was straight and whether 60 miles per hour, the minimum fixed by the witnesses, would be excessive or constitute a proximate cause of the collision would be for the jury and trial court.

While the witnesses who saw the smoking truck could not identify it as the truck involved in the collision and were unable to describe it, we think proof of the circumstances tending to connect it with the collision make competent the testimony of the witnesses as to the emission of smoke by the truck they saw. It is obvious, of course, that plaintiffs could not put on all of their proof at one and the same time and if we are correct in holding that the circumstances make a case for the jury it follows that evidence establishing the circumstances would be competent and, in fact, an indispensable part of plaintiffs' case. The trial judge admitted this evidence subject to being "connected up" with the collision and we think there was no error in this ruling.

This brings us to the final question of the admissibility as a part of the res gestae of a statement of Mrs. Talley to Ted Mitchell, the first witness on the scene: "My Lord, I am dying. Who is driving that truck without lights sitting in the middle of the road?"

Mitchell testified that he was driving west from Morristown to Jefferson City when he saw about 200 yards away what appeared to be a cloud of smoke or steam. He

then drove to within 50 yards of the car, parked and ran to the side of the car. The statement was made within one minute after the witness reached the side of the car, while Mrs. Talley was bleeding badly and apparently believed she was dying. It was the first thing she said after the collision.

Defendants strongly contend that the statement is not a part of the res gestae but a narrative statement of a past occurrence which, under Street Railway Company v. Howard, 102 Tenn. 474, 52 S. W. 864; Gulf Refining Co. v. Frazier, 15 Tenn. App. 662 and other Tennessee cases, cannot be considered an exception to the hearsay rule.

Street Railway Company v. Howard was a suit against the Railway Company by a pedestrian who was struck by a street car. The plaintiff was permitted to prove that after he had been extricated from the car wheels and his wounds had been washed, a period of probably 15 minutes, the motorman said he saw the plaintiff on the track but thought he would get off. The Court held that, under the circumstances, the statement was made after the transaction was completed and was incompetent as a mere narration of a past event.

In Gulf Refining Company v. Frazier, supra, the plaintiff relied upon the statement of the driver of defendant's truck made after the collision and after he had left the truck and was walking around and talking to the plaintiff. The evidence was held improperly admitted under the rule supported by the authorities cited in the opinion that to be a part of the res gestae the statements must have been made contemporaneously with the principal transaction of which they are a part and that, however nearly connected in time they may be, they are inadmissible if a mere narrative of a past occurrence.

■ In the later case of National Life & Accident Ins. Co. v. Follett, 168 Tenn. 647, 80 S. W. (2d) 92, 99, numerous authorities are cited and the rule laid down that statements of one injured, made a few minutes after the accident, ''and while the declarant is suffering such pain and is under such excitement as to preclude any reasonable possibility of fabrication, are, as a rule, admissible as part of the res gestae.'' To the same effect is Johnson v. Copeland, 178 Tenn. 431, 158 S. W. (2d) 986, 988, where the court, speaking through Chief Justice Green, added that the rule of the Follett case applies ''although some small interval of time intervened between the accident and the statement.''

We think these later cases may be said to stand for the principle that, where the declaration is made within a brief interval of time by one injured in an accident and who is still under such stress, excitement and pain as to preclude any reasonable possibility of fabrication, the transaction, as to such a person, is not completed in the sense of the rule excluding a narrative declaration made after the event.

An interesting and instructive discussion of the Tennessee rule is found at 163 A. L. R. 84-86, concluding with the following observation:

''National Life & Acc. Ins. Co. v. Follett (Tenn.) supra, was followed upon analogous circumstances in Johnson v. Copeland, 1942, 178 Tenn. 431, 158 S.W.2d 986, a workmen's compensation case, the emphasis being laid on the fact that the workman was in mortal agony and in no condition to devise anything. Unless these workmen's compensation cases are to be differentiated by the court under the more elastic rule said by some courts to be permissible in

such cases, the Tennessee court may be said to have embraced the broader rule, overruling not so much the prior decisions of its court of final resort on the facts as the grounds taken for those decisions.''

In the present case the declarant was still enmeshed in the wrecked vehicle and suffering such pain and anxiety as to meet the ultimate test of spontaneity and preclude premeditation or design. Garrison v. State, 163 Tenn. 108, 40 S. W. (2d) 1009; Riverside Mills v. Parsons, 176 Tenn. 381, 387, 141 S. W. (2d) 895.

If otherwise admissible as part of the res gestae, a statement will not be excluded merely because it is narrative in form. Tennessee Cent. Ry. Co. v. Gleaves, Adm'r, 2 Tenn. App. 549.

The trial court is vested with a large discretion in ruling on the competency of evidence offered as part of the res gestae. Riverside Mills v. Parsons, supra; White Star Lines v. Williams, 32 Tenn. App. 177, 222 S. W. (2d) 209. In this case the court acted favorable to the testimony and we find no abuse of discretion.

We find no error and the judgments are affirmed with costs.

Hale and Howard, JJ., concur.