LOUISE YOUNG v. FRANKLIN INTERURBAN
COMPANY and ROBERT ALTON CHADWELL.—
306 S. W. (2d) 674.

Middle Section at Nashville. March 1, 1957.

Petition for Certiorari Denied by Supreme Court July 29, 1957.

Walter C. Leaver, Jr., Barksdale, Hudgins & Osborn, Nashville, for appellant.

J. Ross Cheshire, Jr., T. T. McCarley, Nashville, for appellees.

I

SHRIVER, J. This is a suit to recover for personal injuries sustained by plaintiff, a colored woman, while she was a fare-paying passenger on a Franklin Inter-urban bus, following an explosion in the mechanism of said bus.

The explosion tore a large hole in the floor of the vehicle between where plaintiff was seated and the exit which was at the front thereof.

About fifteen passengers were aboard at the time, one of whom fell in the hole created by the explosion, and who was carried out, apparently in serious condition. The other passengers, all of whom were in front of plaintiff, made their way out the front door.

Smoke, gas and flames were emitted from the hole in the floor and a seat caught on fire but was extinguished by the bus operator.

Plaintiff, who was naturally frightened by the explosion and the resulting excitement and confusion, tried to open an emergency door near the rear of the bus but was unable to do so and, thereupon, escaped through a window.

It is interesting to note that she was a heavy-set person weighing about 190 pounds. Nevertheless, she succeeded, with the help of some men on the outside, in crawling through a ten inch opening, this being the maximum height that the window could be raised, through which she escaped.

She testified that she could not go out the front door because there was smoke and fire coming out of the hole in the floor and she was afraid to try to cross over it.

The trial Judge granted defendants' motion for a directed verdict at the conclusion of all the proof, and overruled the motion for a new trial, whereupon, the case was appealed in error to this Court.

## II

### Assignments of Errors

"The Court erred in overruling and disallowing the plaintiff's motion for a new trial, the grounds of which are as follows:

"1. Because the Court erred in sustaining the motion of the defendants for a directed verdict.

"2. Because the Court erred in directing the jury to return a verdict for the defendants.

"3. Because the Court erred in failing and refusing to submit to the jury the question of whether or not the plaintiff exercised reasonable care as a passenger when she attempted to escape defendants' bus in the emergency created by defendants.

"4. Because the Court erred in directing the jury to return a verdict for the defendant on the grounds that the plaintiff as a matter of law was guilty of negligence in the manner in which she attempted to leave defendants' bus.

"5. Because the Court erred in directing the jury that '* * * it was the duty and obligation of this woman herself, under the situation that was there created, to exercise reasonable care as a passenger for her own safety, welfare and protection. There is no question that she selected a very hazardous and dangerous way to get out. There were 12 or 15 other passengers on this bus who made no such selection in getting out of this bus in question. As a matter of law, this plaintiff, under the facts in this case, cannot and should not recover, and for that reason I direct you to return a verdict for the defendants.' "

### III

■ Defendants filed a motion to dismiss the appeal because the assignments of error are too general and indefinite, citing Markland v. Elizabethton Gen. Hospital, 5 Tenn. App. 519; National Life & Accident Ins. Co. v. American Trust Co., 17 Tenn. App. 516, 68 S. W. (2d) 971 and several other cases from this Court as authority for their position.

The assignments are in questionable form, but, since the grounds of the motion for a new trial are copied into and made a part of the assignments which are also supported by a brief pointing out the errors relied on, the motion to dismiss, which we treat as a motion to affirm, is overruled.

## IV

■ The trial Judge in directing a verdict in this cause instructed the jury as follows:

"The Court: Jury, this case is over. The defendant made a motion for a directed verdict. That is a matter that is considered by the Court as a question of law under all the facts in the case.

"This woman was a passenger on this interurban, there is no question about that. And there is no question about another thing. There was an explosion underneath this bus that blew out a section of the flooring—and that there was a situation there, at the time, that was highly confusing, may be, to the people who were passengers on this bus.

"It was the duty and obligation of this common carrier of passengers to maintain and keep their equipment in the highest degree of care and to exercise the highest degree of care in the operation and maintenance of same.

"Seems like there was some fifteen passengers on this bus. This explosion came. There was one other passenger who was there close to this hole. It seems like that she did sustain some injuries to herself there at the time. There is no question about that.

"All these other passengers went out the front door of this bus, which was open. The plaintiff in this case undertook to get out of this bus through a window that was only ten inches high and her weight and everything, with her weight and everything, I don't see how it was reasonably possible that she did get out of it without, may be, tearing her all to pieces by the help of people pulling, pushing and hauling. And she did come out, there is no question about that, out of that window and onto the ground—with some injuries that she has sustained.

"It was the duty and obligation of this woman herself, under the situation that was there created, to exercise reasonable care as a passenger for her own safety, welfare and protection. There is no question that she selected a very hazardous and dangerous way to get out. There were 12 or 15 other passengers on this bus who made no such selection in getting out of this bus in question.

"As a matter of law, this plaintiff, under the facts in this case, cannot and should not recover, and for that reason I direct you to return a verdict for the defendant and so say you all?

"The Jury: Yes sir.

"The Court: All right."

From the foregoing it appears that it was the opinion of the learned trial Judge that the plaintiff was guilty of such contributory negligence as that she was barred from recovering as a matter of law.

The question for determination here is whether or not there was an issue for the jury.

As was said in Hines v. Partridge, 144 Tenn. 219, 231 S. W. 16, 19, and repeated by the Court in many later cases:

"There can be no constitutional exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence upon the issues to be tried, but the case must go to the jury. * * *

"In considering defendant's motion for a directed verdict, that view of the evidence most favorable to plaintiff's case must be taken by the court, and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied."

In resolving this question let's look at the testimony of the plaintiff herself.

On direct examination, on being questioned as to what happened at the time of the alleged injuries, the plaintiff responded as follows:

"A. Well these gears blew up and all this stuff was thrown in the back and through the top and the bus caught on fire and the only way I could get out was through this window. I tried that emergency door, and I couldn't get out and I had to come out through the window. And when all this exploded up there was gas and fire in this hole and it came straight on through and I couldn't jump over and the only way I could get out was through this

window and my lungs were filled with gas and I couldn't hardly breathe and I stuck my head out this window myself and there was a man pulled me the rest of the way, but by me being large, it pulled me like that (indicating) getting me out this window.''

Again in response to a question as to what the plaintiff recalled immediately after the explosion she responded by saying: (R. p. 18)

''A. Well, I didn't know what happened. I was scared so bad, I didn't know what happened. It was a few minutes before I could tick myself together to see and by the time—''

On being questioned about smoke and fumes after the explosion she testified:

''Yes sir, when this explosion happened, this bus just begun to smoke and the gas and the smoke just filled the bus.''

At another point the testimony is as follows:

''The Court: Well, now you have answered the question that you went to the window for the purpose of getting out. Had you gone anywhere else, before you went to that window to get out.

''The Witness: I tried to open the emergency door.

''The Court: All right.

''Mr. Cheshire:

''Q. Are you familiar with the fact that those emergency doors have a slightly different handle from an ordinary door? A. Yes sir.

"Q. For the sake of safety, a precaution? Did you ever try to open one before? A. No sir, I didn't have no reason to.

"Q. Well you are not saying that the door wouldn't open, but you are saying that you didn't know how to open it? A. The door wouldn't open.

"Q. Well, do you know how to open one of them? A. Yes sir.

"Q. How do you open one of them, Louise? A. It's got a long piece there, a piece goes down that way (indicating), you lift up on it, on this door, but it didn't do that.

\* \* \* \* \* \*

"The Court: When they were going out the front, had you started out through the window before that?

"The Witness: No sir, I would have tried to get across there but the fire wouldn't let me. The fire, the blaze had got up and I couldn't get across."

With respect to her condition after she got out of the window she said:

"Well when he pulled me out of the window, and I fell on the side of the road to get my breath because my lungs were full of gas, I couldn't breathe."

She further testified:

"No sir, I was scared and I wasn't thinking about nothing but trying to get out of that bus.

"Q. In fact—you say you wasn't thinking about nothing—you never thought about going out the front door?

"A. I couldn't get out the front door."

Plaintiff testified in regard to a woman who had fallen into the hole in the floor of the bus and stated that she could not get across this hole herself, then this testimony ensued:

"The Court: How large was that hole that you saw and observed?

"The Witness: Well, Judge, I couldn't tell you exactly how large it was because of the fire. You see this fire and smoke was coming up out of this hole.

"The Court: You have no idea then how large it was?

"The Witness: Well it was too large for me to try to get across."

Again on cross examination (R. pp. 66 and 67) when asked the question as to whether or not she was merely afraid to cross the hole in the floor because she had seen the other woman step in it, this testimony was given:

"No sir, it wasn't that, it was the fire, the reason I couldn't get out.

"Q. Well it wasn't that you couldn't step across the hole then, that isn't what kept you from—

"A. The fire, I couldn't step over the fire."

## V

██ It is abundantly clear that, at the time of the injuries complained of, there was, in fact, an emergency condition confronting the plaintiff, and she was justifiably frightened and excited.

Under these circumstances the rule as announced in Chattanooga Electric Ry. v. Cooper, 109 Tenn. 308, 70 S. W. 72, is applicable.

In that case it was said:

"It is a settled law that a person placed in a position of sudden peril and injured by the negligent act of another is not barred from his action therefor because by reason of the impending danger his judgment is confused and he fails to make the most judicious choice between the means of escape from the threatened injury, and takes a wrong step, which, had he avoided, the injury would not have occurred."

Also see East Tennessee, V. & G. Railroad Co. v. Gurley, 80 Tenn. 46 and Cherry v. Sampson, 34 Tenn. App. 29, 232 S. W. (2d) 610.

According to her testimony the plaintiff was afraid to try to cross the hole that had been blown in the floor of the bus because smoke and flames were being emitted from said hole. Confronted with this situation she then tried to open the emergency door, and it may be said that her testimony indicated a reasonable familiarity with the door and with the way it normally would be expected to work. Being unable to open the emergency door she escaped through a window.

Under the circumstances herein shown, if plaintiff was not excused as a matter of law from the charge of contributory negligence by reason of the method chosen by her to escape from the bus, it was, at least, a question for the jury.

Also, reasonable minds might differ as to whether or not there was negligence on the part of the bus company, particularly with respect to the maintenance of an emergency exit in the bus which the ordinary passenger, with reasonable familiarity therewith, could open so as to escape when necessary, there being no other rear exit.

The circumstances attending this accident and the facts as related by the plaintiff, in our opinion, make a case for the jury.

And it was, therefore, error for the Court to direct the jury to return a verdict for the defendants.

It results that the assignments of error, particularly with respect to grounds two and four thereof are sustained. The judgment of the lower Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

Felts and Hickerson, JJ., concur.