JIM CLARK, JR., Plaintiff in Error, v. JAMES
PRESTON ALLISON, Defendant in Error.
—430 S.W.(2d) 784.

Western Section, at Jackson. December 12, 1967.

Certiorari Denied by Supreme Court March 18, 1968.

Clyde West, Memphis, for plaintiff in error.

Tipton & Tipton, Covington, for defendant in error.

BEJACH, J. In this cause, Jim Clark, who was plaintiff in the lower court, appeals in error from a jury verdict and judgment based thereon in favor of defendant, James Preston Allison. The parties will be referred to in this opinion, as in the lower court, as plaintiff and defendant, or called by their respective names.

Plaintiff, a citizen and resident of Tipton County, Tennessee was seriously injured in a head-on collision which occurred on the Tipton-Bethel Church road in Tipton County, Tennessee on or about Saturday, July 24, 1965. Defendant is in the U.S. Marine Corps and is now stationed at Cherry Point in North Carolina. At the time of the accident he was in school at the U. S. Naval Station at Millington, Tennessee. Service on defendant was had by service on the Secretary of State of Tennessee.

Plaintiff's declaration is in four counts. In the first count, plaintiff alleges that defendant negligently drove his automobile on the wrong side of the road and collided with plaintiff's automobile. In the second count, plaintiff alleges excessive speed on the part of defendant, failure to have his automobile under proper control, driving on the wrong side of the road and failure to pull to the defendant's right side of the road. In the third count, plaintiff alleges that defendant violated sections 59-815 and 59-816 T.C.A., and section 59-820 T.C.A. In the fourth count plaintiff sues for damage to his automobile. Defendant filed pleas of not guilty and contributory negligence.

At the time of the accident plaintiff was driving a 1953 Plymouth four-door sedan, and the defendant was driving a 1963 Ford sedan. Plaintiff was headed in a westerly direction, and defendant was headed east. Defendant had just come over the crest of a hill, and plaintiff was going up the east side of that hill.

After the jury returned a verdict for the defendant, plaintiff moved for a new trial, which motion was overruled. An appeal in error was then perfected to this Court. In the Court of Appeals, plaintiff has filed only one assignment of error, which is:

"There is no evidence to support the verdict of the Jury."

This Court must assume in reviewing this case that all differences in evidence have been settled by the jury verdict, and this Court can only decide whether the circumstances of the case are sufficient in point of law to permit a jury to find and reach its verdict. Kroger Co. v. Giem, 215 Tenn. 459, 387 S.W.2d 620; City of Chattanooga v. Rogers, 201 Tenn. 403, 299 S.W.2d 660; City Water Co. v. Butler, 36 Tenn.App. 55, 251 S.W.2d 433.

Also, this Court must take the strongest legitimate view of the evidence to uphold the verdict and take as true all of the evidence tending to support it, discarding all countervailing evidence. Southeastern Aviation, Inc. v. Hurd, 209 Tenn. 639, 355 S.W.2d 436, 371 U.S. 21, 83 S.Ct. 120; Cherry v. Sampson, 34 Tenn.App. 29, 232 S.W.2d 610; Board of Mayor & Aldermen of Covington v. Moore, 33 Tenn.App. 561, 232 S.W.2d 410; D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897. Such being the law, it will be necessary only to quote the following testimony from the record in order to show that plaintiff's

assignment of error must be overruled. Defendant testified as follows:

"Q. (By Mr. Tipton) Now, Mr. Allison, how fast were you going when you approached the crest of that hill?

A. Approximately 35 or 40 miles an hour.

Q. I would ask you whether or not you were on your side of the road?

A. Yes, sir, I was.

Q. When you reached the top of the hill, what did you see?

A. Mr. Clark's car on my side of the road at approximately at the bottom of the hill, 200 yards—200 feet away.

Q. How fast was he going?

A. The first appearance, it appeared to be stopped. I applied my brakes, or just put my foot on the brakes and swerved to the left, and then I locked my brakes, because he was coming at an excessive rate of speed.

Q. Now what portion of your car—What portions of the cars struck each other?

A. The fronts. He hit just inside the right headlight of my car, and I was just inside the right headlight of his car. And it was like so (indicating). There was— They were just six inches of the right fronts were, say, from a head-on collision.

And again at pages 81 and 82, he said:

Q. (By Mr. John Tipton) Mr. Allison, at the time you first—when you say—coming over the hill when you

saw the Clark car, how fast in your estimation was it going?

A. When I first saw it, it appeared to be stopped, and just the glimpse of it, and then I would say 60 to 65 miles an hour when I locked my brakes and swerved. When I initially applied my brakes, and I saw that he was moving, I swerved and locked my brakes.

Q. And what did he do then?

A. And soon as I locked my brakes and swerved, he swerved, too, and there wasn't anything in the world that I could do but just keep my foot on the brake.''

Mrs. Martha Allison, wife of defendant, by deposition read at the trial of this case, testified as follows:

''Question: As you came to the top or crest of this small rise or hill on the top of the Tipton and Bethel Road what, if anything, did you observe?

Answer: I saw this car on our side of the road.

Question: Was this approaching automobile completely on your husband's side of the road?

Answer: Yes.

Question: At that moment was your husband's 1963 Ford automobile on the right-hand and proper side of the Bethel and Tipton Road?

Answer: Yes.

Question: When you first observed the approaching automobile, how far was it in front of you?

Answer: About three or four car lengths.

Question: Was this approaching automobile completely within your husband's right-hand lane of travel headed directly toward you?

Answer: Yes.

Question: What, if anything, did your husband do?

Answer: I vaguely remember the car going to the left.

Question: Which car?

Answer: Our car.

Question: Your husband's car?

Answer: Yes.

Question: Do you remember the impact of the two automobiles?

Answer: No.

Defendant's witness Donna Graham testified as follows:

Q. Now, Miss Donna, just before the accident what side of the road was your brother-in-law driving on?

A. On his right lane.

Q. And when you came over the hill, just before the accident, what did you see?

A. A car was on our side of the road coming pretty fast.

Q. You say a car on your side of the road?

A. Yes, sir.

Q. And it was traveling fast or slow?

A. It was pretty fast.

Q.  At that time, how fast was Jim driving?

A.  About 30.

Q.  At that time, what side of the road was he on?

A.  His right lane.

Q.  And what did he do?

A.  He swerved to the left to miss the guy and at the same time the other guy swerved, too, and they collided in the middle of the road.

Q.  I will ask you if you know anything about what happened after the accident?

A.  No, sir, I don't.

■ Plaintiff's own witness, State Trooper Don Max, who investigated this accident, testified that the debris caused by the collision was in about the center of the paved portion of the road, and that the paved portion of the road was from 18 to 20 feet in width, that the defendant's automobile laid down approximately 14 steps of skid marks, starting 6 feet from the south edge of the paved portion of the road and going at an angle to the approximate center of the road, thus tending to sustain defendant's theory of how the accident happened, and tending to refute plaintiff's theory that the accident occurred on the north or defendant's wrong side of the road at the right edge of plaintiff's lane of traffic.

Plaintiff's assignment of error will be overruled, and the judgment of the lower court will be affirmed. The costs of the cause will be adjudged against the plaintiff.

Avery, P. J. (W.S.), and Carney, J., concur.