## JAGGERS v. SOUTHEASTERN GREYHOUND LINES, Inc.
### No. 8827.

Circuit Court of Appeals, Sixth Circuit.

March 12, 1942.

Cecil Sims, of Nashville, Tenn. (Pride Tomlinson and Hugh T. Shelton, both of Columbia, Tenn., and W. W. Berry and Cecil Sims, both of Nashville, Tenn., on the brief), for appellant.

W. M. Fuqua, of Nashville, Tenn. (W. M. Fuqua, Lindsey M. Davis, and J. Ross Cheshire, Jr., all of Nashville, Tenn., on the brief), for appellee.

Before HICKS, MARTIN, and Mc-ALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Suit by appellant against appellee for damages for personal injuries sustained in a collision between an automobile driven by Sam Leftwich in which she was a passenger, and a bus operated by appellee. The declaration contained three counts.

The first charged a violation of Sec. 2690 (a) of the Code of Tennessee 1934,[1] in that appellee left its bus standing upon the paved and main traveled portion of the highway outside of a business or residence district, when it was practicable to park it off the paved or main traveled portion of the highway.

McALLISTER, Circuit Judge, dissenting.

The second charged a violation of the same statute in that appellee failed, in parking its bus, to leave a clear, unobstructed width of 15 feet upon the main traveled portion of the highway for passage of other vehicles.

---

[1] "2690. *Parking on highways prohibited.*—(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any road, street, or highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such road, street or highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any road, street or highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said road, street or highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle shall be obtained from a distance of two hundred (200) feet in each direction upon such road, street or highway."

The third charged appellee with negligence at common law.

Appellee pleaded the general issue.

At the close of the evidence the court, upon motion, directed a verdict for appellee upon the first count, on the ground that it was not practicable for the bus to have been drawn farther off the road; but submitted the case to the jury upon the second and third counts. A verdict was returned in favor of appellant upon which she had judgment, and thereupon appellee moved the court to set aside both the verdict and judgment and to enter a judgment in its favor, in accordance with its former motion for a directed verdict; or, in the alternative, to grant it a new trial.

The court sustained the motion for a directed verdict, set aside the verdict and judgment and dismissed the case upon the ground that Leftwich's negligence was the sole, proximate cause of the collision. D.C., 34 F.Supp. 667. Appellant complains,— (1) of the directed verdict upon the first count; and (2) of the order setting aside the verdict and judgment upon the second and third counts and dismissing the action.

The accident occurred on Sunday night July 25-26, 1937, between 11:45 P. M. and 12:30 A. M., on the Nashville-Columbia Highway at a point about a quarter of a mile north of Franklin, Tenn. Appellee's bus left Nashville at 11:40 P. M. on its run to Birmingham and was due in Franklin at 12:05 A. M. It was running about ten minutes late. As it neared Franklin it drew toward the side of the highway and stopped in front of a dwelling to discharge two passengers, a woman and a small child. The woman had some difficulty in alighting with the child and the bus had been motionless for about a minute before it was struck at the left rear corner by the automobile driven by Leftwich.

It was stipulated that the bus was 8 feet wide and 9½ feet high and at the time of the accident was standing partially on and partially off the pavement, with its left side extending on to the paved portion of the highway about 5¾ feet. The highway was of asphalt, 20 feet wide and straight for a long distance in either direction, although there was a hill whose crest appeared from photographs to be 100 to 200 feet north and to the rear of where the bus was standing. It was further stipulated that there were gravel shoulders 9 feet, 2 inches wide on either side and level or flush with the main part of the highway and in good condition; that on the west side of the road, the bus' right-hand side, and immediately adjacent to the edge of the shoulder, there was a ditch 3 feet wide, which "had a depth of nine inches in two and one-half feet."

It was stipulated that at the time of the accident the lights on the inside of the bus were burning and that on the rear end there were burning: 5 red electric lights, 7¾ feet above the ground; 2 amber colored lights, 5¼ feet above the ground; 1 red taillight on the right rear side 3¼ feet above the ground; and 2 red taillights on the left rear side, 2¾ feet above the ground. It was also stipulated that there were 2 red reflector lights on the rear of the bus 3 feet from the ground. John Rush, a passenger on the bus and a witness for appellee, testified that he walked 400 feet to the rear of the bus just after the accident, and turning around, facing it, observed that all rear lights were burning. A photograph, taken some time later in daylight, but under conditions otherwise simulating those obtaining on the night of the accident, revealed that the entire rear of the body of the bus could be seen at a distance of 400 feet from an elevation approximating that of the eyes of the driver in an automobile.

There were four occupants in the Leftwich car; appellant, who lived in Hampshire, a town about 15 miles west of Columbia; her fiance, Bill McEwen, who lived in Columbia, which was some 25 miles south of Franklin; and Leftwich and his wife, who were residents of Hampshire. The four had been out since about 7:30 P. M. on a social evening together. They had visited one or two night spots and had drunk lightly of a mixture of gin and Seven-Up, and, although appellee introduced evidence of finding two partially filled gin bottles in or near the Leftwich automobile after it was wrecked, and of the strong smell of liquor around it, there was no evidence that any of the four had been affected in the slightest by their drinks.

Their longest stop had been at the Rendezvous, a night club 5 or 6 miles north of Franklin. They had left there about midnight and after stopping for a moment at a rest room, were driving south toward Franklin in the same direction as the bus, which had preceded it, at about 50

or 55 miles an hour, which was a customary speed along that highway. Just before the accident, appellant and McEwen were discussing whether he should stop at Columbia as they went through or drive on to Hampshire with them and return with a friend. Mrs. Leftwich was participating in this discussion and Leftwich was listening but was taking no active part in it and was keeping a lookout ahead.

Leftwich's testimony was, that as he reached the top of the hill north of Franklin and as his lights leveled out down the hill, he observed a number of lights about 200 feet away which appeared to be on a bus or truck, but which, "* * * gave the appearance of moving along the road. It was a second or two before I realized the lights were standing still. I thought it was moving along about the same speed I was." He testified further, that, "* * * the lights were very deceptive"; that he realized they were on a vehicle of some kind, but they were so deceptive he didn't know what they were on; that a second or so later when he realized the vehicle was parked on the highway and not moving, he was within 50 or 60 feet of it, that he applied his brakes and swerved to the left and tried to avoid it, but struck the bus with the right-hand side of his car, the first contact being "about even with the front wheel or fender on the right-hand side of * * * car." He remembered nothing after that. Rush testified that the wrecked car came to rest out of contact with and about midways of the bus and was facing almost at right angles across the highway. Haralson, the bus driver, testified that the Leftwich car was "* * * sitting crossways of the road, kind of at an angle, pointing north."

On cross-examination Leftwich testified that the road was clear to the left of the bus and that he was not meeting any traffic. (Haralson testified there was no traffic coming either way.) Leftwich admitted that on other occasions he had seen trucks and busses with lights on the rear and that he knew they were a warning to those coming behind.

Of the other three occupants of the car, none was able to testify as to what took place. McEwen was killed, and the injuries of appellant and Mrs. Leftwich were such that their memories were blank as to events which took place from some time before the accident until they revived in the hospital.

About his failure to pull entirely off the highway, Haralson testified that it was customary to discharge passengers wherever they wanted to stop, and that in case of the woman and child he "* * * pulled over as far as I thought was safe to put them off without putting them off in the ditch. Of course I didn't measure it, but just from my general point of view I thought there was ample space left on the highway and I was off the road as far as I thought was safe, for traffic to pass." He testified he was not accustomed to putting passengers off in the ditch and pulled up so the passengers could get off on the shoulder of the road in safety.

On cross-examination he testified that he had been on the same run a year and a half and was "pretty well acquainted with the road," but that "I have to feel those things out as I stop, those shoulders, because I don't run on the shoulders all the time and I don't know." He admitted that he might have pulled out a little farther and that after the accident had pulled off so far as to leave but 3 or 4 feet of the bus on the pavement. He admitted that it was reasonable to expect that other automobiles might be coming along that highway in the same direction, traveling from 50 to 60 miles an hour and that one might be expected to come up any minute.

We think the case should have been submitted to the jury upon the first count and that the evidence was sufficient to support the verdict upon the second and third counts.

There was no contention that appellant was contributorily negligent, and under Tennessee decisions, no negligence of Leftwich could be imputed to her. Knoxville Ry. & Light Co. v. VanGilder, 132 Tenn. 487, 492, 178 S.W. 1117, L.R.A. 1916A, 1111; Turnpike Co. v. Yates, 108 Tenn. 428, 438, 67 S.W. 69.

It is elementary that if the unlawful and negligent acts of appellee concurred with the negligence of Leftwich as the proximate cause of appellant's injury, appellee would be liable for the resulting damages. Beopple v. Illinois Cent. Railroad, 104 Tenn. 420, 427, 58 S.W. 231.

*Count One.* Haralson stopped the bus with more than half its width on

the main traveled portion of the highway. This was a violation of the statute [Ringwald v. Beene, 170 Tenn. 116, 123, 92 S.W. 2d 411] if it was practicable to park or leave the bus standing off the paved or main traveled portion of the highway. Haralson of course thought it was not practicable, but a jury might, upon the evidence, have reasonably concluded otherwise. The gravel shoulders were in good condition and flush with the asphalt and 1 foot and 2 inches wider than the bus. Haralson testified that after the accident he pulled off the highway a foot or two more. Further, a determination of what was "practicable" involves consideration not only for the safety of the discharging passengers, but of the bus and the passengers remaining thereon, and of others coming along the highway. The case should have been submitted to the jury on the first count.

*As to the second count,*—it is conceded that the statute was violated. When the driver stopped he did not leave a clear and unobstructed width of 15 feet upon the main traveled portion of the highway for free passage of other vehicles. He left 14 feet and 3 inches only.

*As to the third or common law count,*— the evidence as to how far the bus could have been seen by the driver of a car approaching from the rear is somewhat conflicting; but we are not concerned here with such conflicts. We must adopt that view most favorable to appellant and we cannot say, as a matter of law, that it was not negligence to stop the bus, at night, with its left side extending 5¾ feet on to the asphalt or main traveled portion of the highway at a point where it could not be determined, by the driver of a car approaching from the rear until he was within 50 or 60 feet of it, whether the bus had stopped or was moving, and especially when the bus driver might have anticipated that cars might approach from the rear at a speed of 50 or 60 miles an hour.

■■ . We cannot agree, as a matter of law, that the negligence of Leftwich was the sole, proximate cause of the accident. If we assume that Leftwich was guilty of gross negligence in driving, we are still confronted with the fact that the bus was left standing upon the highway. Its presence there was a concurring, contributing factor. If it had not been there, there would have been no accident. If the case had been submitted upon the first count, the evidence would have supported a finding that it was unlawfully there. The evidence was sufficient to support the verdict returned upon the second and third counts.

■ As to the second count, the jury was justified in concluding that stopping the bus in violation of the statute proximately contributed to the accident. This is indicated not only by the testimony of Leftwich but by the photographs in evidence.

The judgment is reversed as to the first count and the case remanded for a new trial thereon. See Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029. The appellant has not had a jury trial upon that count.

■■ As to the second and third counts, the judgment is reversed and the case remanded with directions to vacate the order setting aside the verdict of the jury and the judgment rendered thereon and to reinstate the verdict and judgment. Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In our opinion we are not required to remand the case with directions to the District Court to pass upon the motion for a new trial [see Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147] because, as indicated in the briefs, the only question involved here is, whether the case was one to be submitted to the jury. Illinois Cent. R. R. Co. v. Sigler, 6 Cir., 122 F.2d 279, 284.

McALLISTER, Circuit Judge (dissenting).

While I cheerfully acknowledge the forcefulness of the majority opinion as to cause, and regret to dissent, yet I am of the view that the negligence of the driver of the automobile in which plaintiff was riding was the proximate cause of the collision and resultant injuries, and that, therefore, the judgment should be affirmed.