# AUVEL COLWELL v. JIMMY NELSON JONES and JESSIE E. JONES.—346 S. W. (2d) 450.

Middle Section.   December 2, 1960.

Certiorari Denied by Supreme Court May 5, 1961.

354

McAllen Foutch, Smithville, for plaintiff in error.

Edward L. Jennings, Liberty, Sam L. Felts, Jr., R. B. Parker, Jr., Nashville, for defendants in error.

I

SHRIVER, J. This is a suit by Mrs. Annie Helon Reeder Colwell, Administratrix of the estate of Auvel Colwell, deceased, against Jimmy Nelson Jones, Jessie E. Jones and Avalon Daries of McMinnville, Tennessee, brought to recover damages for personal injuries and death of Auvel Colwell, husband of the Administratrix, which injuries were sustained when a milk truck owned by defendant, Jessie E. Jones and driven by his son Jimmy Nelson Jones ran over Auvel Colwell on or adjacent to the Keltonburg Road in Warren County, Tennessee, on September 8, 1958.

The case was tried before Honorable Robert S. Brady, Judge of the Circuit Court of DeKalb County, and a jury, on December 16 and 17, 1959 when there was a verdict and judgment for plaintiff against the defendants, Jimmy Nelson Jones and Jessie E. Jones, for $10,000 and a verdict in favor of the defendant Avalon Dairies, and there was no appeal from the action of the jury in finding in favor of said defendant Avalon Dairies.

On the motion of defendants, Jessie E. Jones and Jimmy Nelson Jones, for a new trial the trial Judge suggested a remittitur of $3,500 and otherwise overruled the motion. The remittitur was accepted under protest and judgment was entered in the Court below in favor of plaintiff against said two defendants for $6,500.

Defendants Jessie E. Jones and Jimmy Nelson Jones have appealed in error to this Court and have assigned errors. Plaintiff also appealed in error from the action of the Court in suggesting a remittitur and has assigned said action of the Court as error.

## II

At the beginning of the trial the parties stipulated that the Jones' milk truck was registered in the name of Jessie E. Jones and that the Colwell truck was registered in the name of plaintiff's intestate, Auvel Colwell.

It is alleged and admitted in the pleadings that this accident occurred on Keltonburg Road in Warren County about 6:25 A.M. on Monday, September 8, 1958.

It is shown that Colwell left his home and family in his 1½ ton pick-up truck about nine or ten o'clock on Sunday Morning September 7, 1958, and took his sixteeen year old son with him, and this is the last time Colwell's wife saw him until after the accident.

On Sunday afternoon and evening preceding the accident, Colwell's father started looking for him and found him and his son in the late afternoon of that day and took the boy home but Colwell did not return home and it was later learned by the family that he was out with a neighbor named Spark Puckett.

The proof is that Colwell and Puckett were drinking liquor during Sunday afternoon and Sunday night and the truck in which they were riding became stalled in the road about a mile and a half from the place where the accident happened. Automobiles attempting to travel the road were blocked so that they had to seek another route around the truck. About five o'clock on Monday morning Puckett went to a farmer's home nearby and persuaded him to pull the truck off with his tractor and, after it was started, Colwell drove on down the road towards where the accident happened later in the morning.

The truck was again stopped near the middle of the road a short distance east of a curve and was in this position when the defendant Jimmy Jones came along in his milk truck and the accident occurred.

Colwell and Puckett had not put out any warning signals to indicate that the truck was stopped in the road and there was testimony that weather was foggy at this point, however, there was also testimony to the effect that it was clear.

There was a field of lespedeza almost knee high on the south side of the road and it was wet with dew.

A half gallon jug almost full of white whiskey was found about 30 feet from the point of the accident.

At the time of the accident Jimmy Nelson Jones was driving his father's one and one half ton milk truck and was proceeding eastwardly along Keltonburg Road at a speed of from 30 to 35 miles an hour according to his testimony. The truck was loaded with 80 empty milk cans and was equipped with booster brakes which were in good working order.

Colwell's farm truck was about 7 feet wide and was standing in Keltonburg Road which is a gravelled road about 16 feet wide at this point. At the time of the accident it was disabled so that it had to be pushed or pulled from the scene.

As defendant Jones rounded the curve approaching the place where the Colwell truck was standing he saw it at a distance that he estimated to be about 100 feet away and Colwell was standing in the road 4 feet behind the truck with his arms raised signaling Jones to stop. Jones

testified that as he went into the curve he let up on the accelerator so that he was travelling about 25 to 30 miles an hour at the time he saw the Colwell truck in front of him. He stated that his brakes were in good order and he thought that he could have stopped his truck within the distance to the Colwell truck but, not being sure, and seeing Colwell standing behind the truck, he elected to cut to the right and went up an embankment about 18 inches high and into the lespedeza field. The record shows that he travelled a distance of 96 feet from the point where he left the road to the point where he brought his truck to a stop. In the meantime he ran over Colwell who had also run into the field south of his truck when he saw the Jones' truck bearing down upon him. Colwell was run down and severely injured about 10 feet south of the road in the lespedeza field and later died from these injuries.

There is evidence that Jones' truck left the road approximately 100 feet west of the Colwell truck and came to rest some 18 or 20 feet to the right or south of the Colwell truck and about even with it in the lespedeza field. Colwell received injuries to his head which paralyzed his left side and he remained paralyzed from the date of the accident, September 8, 1958, until he died on September 10, 1959. At the time of the accident Colwell was 36 years of age. He had been discharged from the army on March 26, 1958, being a Sergeant at the time of his discharge, and drawing $400 a month as pay. At the time of his death he had an earning capacity of from $4 to $5 a day as a farm laborer.

## III

### Assignments of Error

The plaintiffs in error, defendants below, have filed five principal assignments of error with multiple sub-assignments which we will not attempt to discuss separately.

Assignment No. 1, with its sub-assignments, is to the effect that there is no evidence to support the verdict of the jury and, therefore, the motion at the conclusion of the evidence to direct a verdict in favor of defendants should have been sustained.

Assignment Nos. 2 and 3 complain of the action of the Court in admitting a map, plaintiff's exhibit No. 1, and the testimony of O. E. Underhill relating to said map.

Assignment No. 4 complains of the admission of evidence concerning insurance.

Assignment No. 5 asserts that the verdict was the result of passion, prejudice and caprice on the part of the jury as well as sympathy and the injection of liability insurance into the evidence.

As hereinabove stated the plaintiff below appealed in error and has assigned as error the action of the trial Judge in suggesting a remittitur of $3,500.

## IV

Is there evidence in the record on which the jury was warranted in finding for the plaintiff and which justified the trial Judge in overruling defendants' motion for a directed verdict?

■ It is so well settled in this jurisdiction that it is not necessary to cite authority for the proposition that, in passing on a jury verdict, the Court of Appeals must look to all the evidence construed most favorably to the plaintiff, take as true that which tends to support the verdict, discard all countervailing evidence, and allow all reasonable inferences to uphold it.

. See Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450, and cases therein cited with approval.

■ It cannot be successfully maintained that defendant, Jimmy Nelson Jones, driver of defendant's truck, was, as a matter of law, free of negligence which proximately contributed to or caused the accident in question in view of his own testimony and that of other witnesses in this record.

He stated that he was proceeding along this narrow gravelled road and around a curve on a morning that he described as being foggy, so that his view ahead was impaired, and at a rate of speed that caused him to doubt his ability to stop his truck within the 100 feet between him and the stalled truck of Colwell, which he saw ahead of him.

This defendant described the incident by saying,

"I seen a truck setting in the middle of the road and this man behind it holding up his hands, he never did move them or nothing, he was just holding them up, and I applied the brakes and didn't know whether I could stop or not, he wasn't making any effort to get out of the way or nothing, so I didn't want to take no chance, so I cut out through the field."

He then stated that, as he cut out to the right into the field, Colwell went running out in front of him and, "Before I got to him he just stopped and looked at me * * * and I hit him."

When asked to explain to the jury how he travelled 96 feet out through a lespedeza field and struck Mr. Colwell if he was doing only 25 miles an hour, he answered,

"I had to hit that field. I could have stopped if I went straight on but to the time I got to the truck I saw—but I wasn't sure and he never did move or nothing so I didn't want to take no chance so I took off through that field and I hit that wet grass and everything it didn't help none, it just kept sliding on."

He further testified as follows:

"Q. Yes, sir, now son answer my question, driving the truck that you were driving on the morning of this accident, with 80 empty milk cans in it, at 25 or 30 miles an hour, could you or not have stopped in 100 feet if you would have tried? A. Yes, sir, but he was standing behind it and he wouldn't move.

"Q. What did that have to do with it, him standing behind it? A. I didn't know for sure whether I could stop or not."

When asked to give the Court and jury the benefit of his best estimate as to how many feet south of the south edge of the road he was when Colwell was struck and run over he answered, "He was about ten feet out."

It is to be noted that defendant, Jimmy N. Jones, lacked about two months of being 18 years old when the accident happened.

There is evidence in the record that the stalled truck of Colwell was visible to the defendant driver as he turned the curve about 150 feet away rather than 100 feet as he estimated it.

In Carney v. Goodman, 38 Tenn. App. 55, 270 S. W. (2d) 572, 576, it was pointed out that the test in determining whether or not the negligence of a driver running into the rear of a vehicle parked on the roadway was the proximate cause of the accident, or merely a contributing cause, was whether the driver running into the standing vehicle saw it in time to enable him to avoid the collision. If he did, then his negligence would be held to be a proximate cause.

The opinion in Carney v. Goodman quoted with approval from Kline v. Moyer, 325 Pa. 357, 191 A. 43, 111 A. L. R. 406, as follows:

"Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause."

But it is insisted that the deceased was guilty of such contributory negligence as to bar his recovery as a matter of law.

It should be pointed out that regardless of whether the deceased was guilty of negligence in failing to put out flags or signals to warn approaching vehicles of the fact that his truck was stalled in the road, if the

defendant, Jones, saw the stalled truck in time to avoid a collision it was his duty to do so. We think it cannot be successfully argued that minds of all reasonable men would agree that the failure to put out signals or flags on the part of the deceased was the proximate cause of the accident, hence, the question was one for the jury.

Defendant Jones testified that Colwell was standing behind his truck with his hands raised and that after the defendant had pulled his truck into the lespedeza field Jones ran over there and stopped in front of the on-coming truck.

Common experience and knowledge makes it manifest that only a few seconds elapsed between the time the defendant's truck appeared around the curve and the time Colwell was run over in the lespedeza field some 10 feet south of his own truck.

In those few seconds it is reasonable to assume that Colwell, who was standing behind his truck with his hands raised in a gesture signaling Jones to stop, observed the speed at which the on-coming truck was travelling and became frightened lest it would not stop and would crush him against the back of his own truck. Hence, in his panic, he ran into the lespedeza field to seek safety. Undoubtedly the time when he left his post behind the truck to run into the field and the time when Jones pulled to the right to go into the field were almost simultaneous.

We have all had the experience of meeting one on the sidewalk and, in starting to pass, we moved to the right or left as the person meeting us simultaneously moved in the same direction. Each, in an effort to pass the other again started to move in the same direction, so it became

necessary to stop and move more deliberately in order to pass.

Something of this nature is evidently what the jury thought happened when the truck and Colwell both headed into the field. And the jury resolved the questions of negligence and proximate contributory negligence favorably to plaintiff.

In view of the fact that some of the testimony indicates that the truck was about 150 feet away instead of 100, and in view of the defendant's statement that he probably could have stopped his truck before crashing into the stalled truck of Colwell, and considering the great distance travelled by the defendant's truck before it came to a stop, the jury may have believed that young Jones was travelling much faster than he estimated his speed to be in his testimony, and that his speed on this narrow country road around a curve on a foggy morning was the proximate cause of the injury, and that Colwell was guilty of remote contributory negligence thus accounting for a $10,000 verdict where a man only 36 years of age suffered in a hospital as a helpless cripple for more than a year after he was injured before his death finally occurred as the result of the accident.

If it be conceded that plaintiff's intestate was guilty of negligence in stopping his truck in the road without putting out the requisite flares or flags as provided by statute, and as contended by the defendant, the question of whether this negligence was the proximate cause of the injuries and resulting death of Colwell was a question for the jury.

See Standridge v. Godsey, 189 Tenn. 522, 226 S. W. (2d) 277, Noe v. Talley, 38 Tenn. App. 342, 274 S. W. (2d)

367, DeRossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366, and Thompson v. Jarrett, 44 Tenn. App. 513, 315 S. W. (2d) 537.

■ As to assignments Nos. 2 and 3, which complain of the action of the Court in admitting plaintiff's exhibit No. 1, a drawing of the road at and near the scene of the accident, and in admitting the testimony of O. E. Underhill, a surveyor who made the drawing, we are impressed that there was no reversible error in the action of the Court in this regard.

The map purports to show the conditions existing on December 14, 1959, a few days before the trial and it was allowed in evidence with the reservation that the Court would sustain the objection to it if it was not subsequently made competent by other testimony. No further effort to exclude the drawing was made and the testimony of witnesses following its introduction probably made it competent, though the question of its weight as evidence was for the jury. Furthermore, counsel for the defendants, on cross-examination of certain witnesses, referred to the map.

If there was any error with respect to the introduction of this map and testimony, it has not been shown to have affected the results of the trial, and, under our Harmless Error Statute, T. C. A. sec. 27-116 et seq., it would not call for a reversal of the judgment below.

We are satisfied that these two assignments should be and they are, accordingly overruled.

Assignment No. 4 complains of the injection of matters concerning insurance into the trial. Mr. Robert Foutch, a member of the State Highway Patrol, was

introduced as a witness on behalf of plaintiff and, after testifying at some length regarding what he saw and knew about the accident, counsel for plaintiff asked him if he subsequently went to the scene of the accident with anyone for any purpose after that day, to which he replied: ''I went out there that afternoon with the insurance man.''

No objection was made at the time of this voluntary statement by the witness.

On re-direct examination this witness testified about some pictures that were made at the scene of the accident by Mr. Reed Ramsey, after answering that he did not know in whose behalf Mr. Ramsey was there making the investigation, he was further questioned as to who Mr. Reed Ramsey was and he answered, ''He is an insurance representative.'' Thereupon, counsel for the defendants moved for a mistrial but the Court stated that the question was not competent and the objection to the question was sustained. Upon counsel pressing his motion for a mistrial the Court instructed the jury: ''Now you just disregard that altogether ladies and gentlemen of the jury. That answer was altogether improper.'' Counsel for defendants stated that the question was improper and the Court then reiterated, ''Yes, sir, the question was improper too Ladies and Gentlemen. Now you just disregard that altogether, and pay absolutely no attention to it, just disabuse your minds of that question and answer.'' Whereupon, the Court overruled the motion for a mistrial.

In Lasater Lumber Company v. Harding, 28 Tenn. App. 296, 189 S. W. (2d) 583, in an opinion by Judge Ketchum it was said that the custom of automobile owners in

carrying liability insurance against loss or damage has become so general that jurors must be assumed to be cognizant of the fact, and the tendency to refuse reversals for bringing before a jury the carrying of indemnity insurance by the defendants is proper, especially where it appears that no improper practice has been resorted to.

In Goodall v. Doss, 44 Tenn. App. 145, 312 S. W. (2d) 875, this Court dealt with a similar assignment and observed that after the question concerning insurance was answered by the witness, no further reference to insurance was made and it did not appear that plaintiff or his counsel had tried to improperly influence the jury with respect to this matter, hence, the Court overruled the assignment on that ground.

It was pointed out in the said Goodall case that in Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461, this whole question was thoroughly discussed and our Harmless Error Statute applied. It was pointed out by the Court that, under the Acts of 1911, the probabilities and tendencies of errors in the trial below are not to be considered grounds for reversal but there must be an affirmative appearance that the error affected the result of the trial. Also see Logwood v. Nelson, 35 Tenn. App. 639, 250 S. W. (2d) 582, and Finks v. Gillum, 38 Tenn. App. 304, 273 S. W. (2d) 722.

We think the same rule should be applied here, and, therefore, assignment No. 4 is overruled.

Assignment No. 5 complains of the action of the Court in overruling the defendants' motion for a new trial upon the ground that the verdict was predicated on passion, prejudice and caprice, and was the result of

sympathy and of the injection of liability insurance into the case, and that the verdict was excessive.

As noted hereinabove, the trial Judge suggested a remittitur of $3,500 after the jury brought in a verdict for $10,000 in favor of the plaintiff. Counsel for plaintiff excepted and perfected their appeal in error and have assigned this action of the Court as error.

It is to be remembered that Auvel Colwell was a white male citizen 36 years of age at the time of his death, and, therefore, had a life expectancy of 34.76 years. He had been recently discharged from the Army of the United States, where he held the rank of Sergeant and drew a salary of $400 a month. However, his earning capacity as a farm hand in the community where he lived was from $4 to $6 a day.

He was admitted to the Veterans' Hospital after the accident on September 8, 1958 where he died on September 10, 1959. He had a concussion and a fracture of his skull and remained paralyzed for 367 days from the time of the accident until his death which was caused by a chronic brain syndrome associated with cerebral trauma. And, while the hospital and doctor's bills were expressly excluded by the jury from their verdict, it is worthy of note that his total hospital bill was $4,048.80 and his burial and funeral expenses amounted to $1,000. He was the father of four children who, with his wife, survived him.

There is no question in the record as to the fact that the condition of this man, who lay in a hospital bed helpless and paralyzed for a little more than a year, was the result of the accident when defendant's truck ran over him. There is evidence as to his condition during

this year in which he was conscious from time to time but helpless.

In view of his life expectancy of 34.76 years and based on the average wage of $5 a day for 300 days a year, the economic value of his life ran to more than $50,000.

When we consider the pain and suffering for which there is no yardstick, together with all the other factors involved herein, we think that the defendant's fifth assignment should be overruled, and that the assignment of error by the plaintiff should be granted and the $3,500 remittitur restored.

Under section 27-118, T. C. A., it is the duty of this Court, if in its opinion, the verdict of the jury should not have been reduced, to restore it. See Waller v. Skeleton, 31 Tenn. App. 103, 212 S. W. (2d) 690, where it was observed that the law allows plaintiff but one action for damages and if plaintiff is ever to be compensated it must be in this action and that compensation must be, not only for what the deceased suffered, but also for the other factors that enter into an appraisal of his life.

For the reasons hereinabove stated, the assignments of error on behalf of the plaintiffs-in-error are overruled and the assignment on behalf of the plaintiff below, defendant-in-error here, is sustained and judgment entered here on the verdict of the jury for $10,000 against the two defendants, Jimmy Nelson Jones, and Jessie E. Jones, together with the costs of the cause.

Modified and affirmed.

Hickerson and Humphreys, JJ., concur.