DORA G. BARR

*v.*

R. M. CHARLEY, SR., and R. M. CHARLEY, JR.

387 S.W.2d 614.

(*Jackson,* April Term, 1964.)

Opinion filed December 11, 1964.

Petition for Rehearing Denied March 4, 1965.

446

JAMES M. MANIRE, Memphis, for petitioner.

JOHN S. PORTER, of BURCH, PORTER & JOHNSON, Memphis, for respondents.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This was an action for damages brought by the plaintiff in the Circuit Court of Shelby County, Tennessee, for damages arising out of a traffic accident on August 10, 1962, in which her husband, William E. Barr, was killed.

The jury returned a verdict of $15,000.00 for the plaintiff after the motion of the defense for a directed verdict was denied. Upon appeal, the Court of Appeals, Western Section, reversed the trial court and ruled that the deceased was guilty of such contributory negligence as a

matter of law that the motion of the defense for a directed verdict should have been sustained.

The plaintiff now petitions this Court for a writ of certiorari. In order to determine how to dispose of this petition, a review of the facts as determined through the trial testimony is in order.

The only testimony we have to the events leading up to the accident is that of the defendant and his witnesses because the death of Mr. Barr removed his testimony and his whereabouts on the night in question between five o'clock in the afternoon and eleven-thirty in the evening when the wreck occurred are unknown.

It is known that in the scope of his employment, Mr. Barr was required to entertain business guests. It was also known that on these occasions he sometimes partook of alcoholic beverages, but he was not known as a heavy drinker nor did he miss work on that account. Yet, on the night of the accident, he had been drinking because a broken liquor bottle was found in his car and the results of a subsequent autopsy disclosed that there was alcohol in his bloodstream.

The accident occurred on Holmes Road in the White-haven community of Shelby County, Tennessee. In the vicinity in question Holmes Road runs in an east-west direction, crossing a new expressway on an overpass. The overpass is newer than the adjacent road and is wide enough for four lanes, but is marked for only two lanes. On each side of the overpass there is a funnel portion which eases the transition from two to four lanes and back again.

On the night of August 10, 1962, R. M. Charley, Jr., and his friend Robert Slayton went to a dance at South-

moor Country Club which is in the Whitehaven area. The two went without dates about eight o'clock and stayed until about eleven o'clock when they decided to leave. They were returning from the dance traveling in a westerly direction on Holmes Road. Just as they got on the overpass, their right rear tire went flat. Mr. Charley testified that he let the car coast to a stop on the funnel portion of the overpass. This is supported by all of the defense witnesses.

The two young men could not fix the flat because they had no serviceable spare tire. Earlier in the day Mr. Charley had had a flat and had been required to put the spare on at that time. In a very short time two young women who had also been to the dance came upon the disabled car and gave the two young men a ride to the place where Mr. Slayton had left his car. The purpose of this maneuver was to get the car of Mr. Slayton and take its spare and put it on Mr. Charley's car, which was sitting near the overpass with its lights on but unattended.

Mr. Charley worked for a firm managed by his father, R. M. Charley, Sr., and he worked the shift which began at twelve o'clock midnight. Because of the late hour Mr. Slayton and Mr. Charley, Jr., decided that it would be best to take Mr. Charley to work first, then repair the car. Accordingly, they went to the Charley house to get a change of clothes for Mr. Charley, then Mr. Slayton took him to work. On the return trip Mr. Slayton discovered the wreck.

The car driven by the deceased had struck the rear of the Charley vehicle causing it to travel 172 feet after the impact. The car of the deceased traveled 119 feet after impact.

All of the testimony of the defense places the Charley car on the funnel portion of the overpass, but the officers who investigated the accident for the Sheriff's department said they could find no tire marks on the shoulder at or near the alleged parking place nor at the apparent point of impact. On the other hand the officers testified that there were marks suggestive of a flat tire and rim near the apparent point of impact. Also near this point were the usual debris of a crash and the beginning of a long gouge probably caused by the universal joint of the Charley car after the impact as it was pushed down the road by the force of the collision. These marks, the officers concluded, tended to place the Charley car in the center of the westbound lane contrary to the allegations of the defense.

The wreck instantly killed Mr. Barr. An autopsy was ordered two days after his death and as a result of it he was revealed to have .21% alcohol by weight in his blood at the time of the autopsy. The examining doctor, on cross-examination, admitted that the body produced alcohol in the blood often after death as a result of natural processes and that as much as .10% had been known to be produced.

The sole issue of this appeal seems to be the correctness of the Court of Appeals' decision that the directed verdict should have been given by the trial court.

From all of the testimony it is clear that the car of the defendant was on the road to some extent. The car was not so disabled that it could not be moved. It was possible notwithstanding the flat tire to move the car back a few feet to the wider portion of the overpass. This being the case the defendant was in violation of sec. 59-859, T.C.A., which forbids the parking of a vehicle,

whether attended or unattended, on the roads of the State outside business or residential areas. This Section does not apply to disabled vehicles but, as we have seen, the car of the defendants was not that disabled.

In *Jaggers v. Southeastern Greyhound Lines,* 6 Cir., 126 F.2d 762 (1940), the bus driver parked the bus half on and half off the road. The reasonableness of his actions under the circumstances was held to be a question for the jury.

In another case involving a collision between a car traveling on the state road and a parked vehicle, partly on the road, the court said that the issue of proximate cause for the jury was a proper one and that it was to be determined on the mixed considerations of logic, common sense, justice, policy and on precedent, as applied to the facts of each case. *Carney v. Goodman,* 38 Tenn.App. 55, 270 S.W.2d 572 (1954).

 Having determined that the reasonableness of the defendants' actions was for the jury to determine, we also note that a motorist has the right to assume that his passage will not be blocked by the illegal placement of another vehicle, and he is not required to maintain such control of his vehicle as to stop before striking an obstruction which he has a right to assume will not be there, and that the question of reasonable care on the part of such a motorist is one of fact dependent upon the circumstances of the case. *Fontaine for Use of Traveler's Ins. Co. v. Mason Dixon Freight Lines,* 49 Tenn.App. 598, 357 S.W.2d 631 (1961). Young Charley, therefore, was in violation of a State traffic law.

██ ██ It is negligence as a matter of law for one to operate a vehicle on the roads of the State while under

the influence of an intoxicant. One is presumed to be under the influence of an intoxicant when there is .15% or more alcohol by weight in the bloodstream, sec. 38-701—sec. 38-714, T.C.A. If the finding of the autopsy is correct then there is evidence that the deceased was under the influence of an intoxicant at the time of the accident, and, therefore, guilty of negligence as a matter of law. Also, from the distance traveled by the two cars it is probable that the deceased was, at the time of the wreck, exceeding the posted 35 mph speed limit on Holmes Road.

■ ■ The evidence tends to show negligence on the part of both of the drivers, but the negligence of one or both of them, while it is a factor, is not the primary factor to consider. The main issue in this case is the proximate causation of the accident; for where there is an accident and one or both of the parties are negligent the issue of proximate causation is usually for the jury. *Standridge v. Godsey,* 189 Tenn. 522, 226 S.W.2d 277 (1949) ; *Thompson v. Jarrett,* 44 Tenn.App. 513, 315 S.W. 2d 537 (1957) ; *Colwell v. Jones,* 48 Tenn. App. 353, 346 S.W.2d 450 (1960) ; *Chandler v. Nolen,* 50 Tenn.App. 49, 359 S.W.2d 591 (1961). It was, then, proper for the trial court to submit the consideration of proximate causation to the jury.

A strikingly similar case was presented in the unreported Court of Appeals case of *White et al. v. Forest Hill Dairies Inc. et al.,* decided in 1960. In that case, cited by the counsel for appellant in his brief, the plaintiff was a woman who allowed another to operate her automobile. She had had a few beers with the driver so she was aware of his intoxication. The weather was wet with a wind driven rain falling and witnesses to the accident reported that the driver was speeding. The car in which

the plaintiff was riding struck the milk truck of the defendant resulting in property damage and physical injury. There was evidence that the milk truck was parked for a delivery without its parking lights on. There the court said:

"It (the jury) could have properly inferred from the evidence as testified to by the parties who had the opportunity to determine the condition of Brantley (the driver) at the time, that he was under the influence of an intoxicant when the White's permitted him to have the car. The jury could have also determined that the proximate cause of the accident was the speed of the car through a pouring rain in a negligent manner by the driver * * *.

"Even if the jury had found that the truck had been left by Brewer standing on a portion of the road in violation of the city ordinances, and had further found that the rear light of the truck was not burning * * * if both parties had been in violation of the city ordinances, it still was a question for the jury under the facts of this case to determine which of the violations was the proximate cause of the collision. * * *"

The court in the White case, supra, supported its decision by the similar case of *Adams v. Brown,* 37 Tenn. App. 258, 262 S.W.2d 79 (1953). There the proximate cause of an accident between two persons, both of whom were violating the traffic laws, was held to be a proper question for the jury.

In reversing the trial court the Court of Appeals relies upon the case of *Quarles v. Gregg,* 30 Tenn.App. 216, 204 S.W.2d 535 (1947). That case is easily distinguishable from the case at hand because in the Quarles case the

deceased struck the back of a second truck which had stopped behind a disabled truck which had placed flares out in warning and where an officer was directing traffic. In that case the deceased had been drinking and the court held that the gross contributory negligence of the deceased barred recovery.

The factual situations in the Quarles case, supra, and the present case are not at all alike. Certainly had the conduct of the deceased, Mr. Barr, been as extreme as that of the deceased in the Quarles case, the situation herein would be different. But the negligence of Mr. Barr cannot compare with that in the Quarles case, hence the decision of the court in that case is not binding upon this factual situation.

It is also contended by the defense that there can be no case made out on the basis of marks on the pavement alone following an accident. Let us point out that here we have more than marks on the pavement alone. We have the testimony of witnesses placing the car of the defendant at or near the apparent point of impact and the testimony of the investigating officers fixing the position of the cars after impact. The marks on the pavement only serve to fill in the missing pieces, not to construct the entire puzzle. It is our opinion, therefore that the verdict of the jury did not rest on conjecture or speculation.

The defense asserts that the failure of the deceased to stop his car in time to avoid the collision constituted a violation of the assured clear distance rule. First, in this regard, we call to mind the rule in the Fontaine case, supra, where it was said that a motorist did not have to have such control of his vehicle so as to be able to

avoid an obstruction which he has a right to assume will not be there, such as an illegally parked vehicle.

Then we refer to the case of *Strickland Transportation Co. v. Douglas,* 37 Tenn.App. 421, 264 S.W.2d 233 (1953). There a motorist struck another vehicle parked under a street light while he alleged that he was keeping a look-out ahead. The court there said that the assured clear distance rule as developed in *Main Street Transfer and Storage Co. v. Smith,* 166 Tenn. 482, 63 S.W.2d 665 (1933); *Virginia Avenue Coal Co. v. Bailey,* 185 Tenn. 242, 205 S.W.2d 11 (1947); and *Halfacre v. Hart,* 192 Tenn 342, 241 S.W.2d 421 (1951), does not apply where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect. They said that all drivers must use reasonable care under the circumstances which exist at a particular time, and the standard governing what is reasonable care is flexible and the jury is the proper body to determine if it has been adhered to.

In the light of the authorities reviewed and the facts as presented in this case we are of the opinion that the Court of Appeals was in error in reversing the trial court. The decision of the Court of Appeals is therefore reversed and the verdict of the jury for the plaintiff for $15,000.00 plus interest and costs is affirmed.

On Petition to Rehear

There has been filed herein a courteous, dignified and forceful petition to rehear. In this petition a number of cases have been cited which were not heretofore cited. These cases primarily deal with an intoxicated driver of an automobile in criminal prosecutions. Two cases are cited wherein the Court concluded that by reason of the

intoxication of the driver the action was barred because such driving constituted negligence and was the proximate cause of the accident. We have read all the cases cited again having read them many times heretofore. The contention made in this petition by the authorities cited is in effect a reargument of what we considered in our original opinion.

 It must be borne in mind in considering the cases now cited that the doctrine of contributory negligence does not apply to criminal acts; the negligence of one killed by another, who is violating a law, does not relieve the violator; and the violation of the statute, driving while intoxicated, is not excused by the negligence of the person killed. *Lauterbach v. State,* 132 Tenn. 603, 179 S.W. 130, and many other cases to the same effect that may be found by Shepardizing this case.

 Counsel relies upon and quotes from our case of *Keller v. State,* 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685, which holds to the same effect as the Lauterbach case, supra. This case though is cited herein for the reason that the Court therein reaches the conclusion that the driver was committing an unlawful act which was *malum in se.* The Court then goes on and reaches the conclusion that even though such driving might be a criminal act nevertheless when we come to consider a civil suit such an act may be negligent within itself, and it depends entirely on whether this act caused the damages or the negligence of the other party caused the damages. Because a person is guilty of a criminal act does not say that he in so doing might not have been less contributory than the other. In other words where there is a disagreement as to the facts it is the act that caused the damages that is responsible for those damages.

The case of *Schwartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323, is likewise cited by the petitioner here on the proposition that driving while intoxicated is such an act that it demands that we hold that one driving while intoxicated is guilty of such proximate contributory negligence that he cannot recover in a civil action. This case, as well as that of *Hicks v. Herbert,* 173 Tenn. 1, 113 S.W.2d 1197, are cited by the petitioner to this effect.

These two cases were later considered by this Court in *Edenton v. McKelvey,* 186 Tenn. 655, 212 S.W.2d 616. The writer of the present opinion while on the Court of Appeals had written the majority opinion for that court dismissing this suit for the reasons set forth in *Schwartz v. Johnson,* and *Hicks v. Herbert,* supra. This Court then granted certiorari and in a unanimous opinion, the writer of the present opinion not participating therein because he had written the opinion otherwise on the Court of Appeals, held that questions thus presented of intoxication of the driver of the automobile and the contributory negligence of the other party were questions to be considered by the jury. This Edenton opinion was written by Chief Justice Neil. Among other things, he said:

"Now, the four members of the Court who dissented were of the opinion that when the evidence was considered in its most favorable light for the plaintiff and against the defendant that it was a jury question. In other words, it was a question for the jury to say whether Miss McKelvey knew that Edenton was too drunk to safely drive his automobile and, as we understand the minority view, reasonable men might differ as to the extent of her knowledge of his intoxication

458

and hence it made a jury question. We do not understand, however, that the Court differed as to Edenton being drunk, but there might be ground for argument among reasonable men as to whether she knew enough about his intoxication, and the extent of it, that a person of ordinary care and prudence would not ride with him.''

This Court then in the Edenton case held just that, that this constituted a jury question. The Court in this opinion cites the Hicks and Schwartz cases, and concludes the opinion thus:

''These guest cases where the parties are alleged to be under the influence of whiskey, and chargeable with negligence and contributory negligence, are difficult of solution. The factual situations are generally different. No two cases are alike. It is said that every case of this kind ought to be decided on its own merits rather than upon precedents found in the Reports. We are inclined to this view.''

The factual situation, as outlined in our original opinion, clearly warrants and demands that we reach the same conclusion as reached in the Edenton case, and as reached in our original opinion heretofore rendered. For the reasons herein stated the petition to rehear is denied.